Cooper *vs.* Mullins.

## COOPER *vs.* MULLINS.

1. The doctrine that servants of the same master cannot have redress against the master, for the consequences of each other's negligence in his service, being founded upon the policy of making each servant interested in the good conduct of the rest, cannot apply to a case where the respective situations of the servants allow no opportunity for the exertion of a mutual influence upon each other's carefulness.

2. Pecuniary injury is not the only one for which compensation ought to be allowed in damages.

3. A verdict will not be set aside as contrary to evidence, because it may conflict with the conclusions of a witness who drew his conclusions from the interchange of signs between himself and another person, and who testifies under a strong motive to support those conclusions.

Case, in Fulton Superior Court. Tried before Judge BULL at April Term, 1857.

This was an action brought by James Mullins against James F. Cooper, superintendent of the Western and Atlan-

tic Railroad, to recover damages for an injury, received by the plaintiff, and resulting from a collision of trains running on said road.

Plaintiff proved by the attending physicians the nature and extent of the injury he received; that his left arm was broken in several places; the elbow was seriously and materially injured; that the injury was received in September, 1855, and that he was confined, by reason of said wounds, till the last of December thereafter; his elbow joint was still (at the time of the trial) stiff, and incurable in that respect; Dr. Dearing's bill for attention was about twenty-five dollars.

Plaintiff further proved, that he was in the employment of the *Georgia Railroad,* at the time of the injury, as an engineer; that he was formerly a machinist, and that he was incapaciated, by reason of said injury, for a machinist, but not for an engineer, but that he could not, as an engineer, be able to *reverse* an engine so promptly as before.

The circumstances under which the plaintiff went upon the Western and Atlantic Railroad, upon the occasion of receiving the injury, were as follows:

The machinist of the Georgia Railroad shop, in the city of Atlanta, was applied to by an officer of the Western and Atlantic Railroad for an engine and engineer, to go up the Western and Atlantic Road, to bring down from Chattanooga a train of cars, as that road did not have sufficient motive power to bring down the cars, which belonged to the Georgia Road, as fast as they were needed below; said officer saying that he wanted an engine and engineer to make a trip up the road after them. In consequence of this application, Mullins was sent up the road with an engine, with instructions from the Georgia Railroad to bring down only empty cars belonging to the Georgia Railroad. Plaintiff was willing to go, and was selected because he knew the Western and Atlantic Road, having made similar trips before. There was a general agreement between the two Roads that such service was to be paid for, and for similar services before rendered, the Georgia Road had been paid by the Western and Atlantic Road. This trip was not a gratuity; Georgia Road expected to be paid for the trip; plaintiff, while making this trip, was subject alone to the orders of the officers and agent of the Western and Atlantic Road.

Plaintiff further proved by the witness, Bruner, that, in making the trip under the circumstances above stated, on his return down with the cars, when about forty miles from where the accident occurred, he got behind with his train on account of his engine *foaming,* there seemed to be several trains coming down at the same time,) and was, therefore, not suited to run in front. The witness, who was engineer of the front train, displayed a flag, which indicated that another train was following—a signal well known to railroad men. Plaintiff's train had the right to the track, even if he had been three hours behind the schedule time, the flag having preceded him; he was only about twenty-five minutes out of time when witness left him. There was no rule of the road which required regular trains which might be out of time, to stop; the rule required other trains to wait for them and to keep the track clear. Plaintiff's train consisted of Georgia Railroad cars and a caboose belonging to the Western and Atlantic Road, and he was accompanied on the trip by a conductor of the Western and Atlantic Road, whose business it was to regulate the running of the train.

Plaintiff having closed, defendant read the depositions of Henry G. Cole, taken by commission, who deposed: That he had control of the engine and train at the Etowah embankment, in September, 1855; the engine and train were used for hauling earth into the embankment at the Etowah river; deponent and Kendrick were the contractors for said work; it was their daily practice to send the earth train after water to the station, about three miles and a half from the works; usually sent it after the express train; on the day of the collision, two express trains passed at schedule time, and we waited one hour and a half for the third, and finding our water was giving out, the engine was sent to the station for water; about fifteen minutes after it started, witness saw the train, of which Mullins was engineer, approaching; witness immediately took position at a conspicuous place near the track, and several times made the usual sign for stopping trains, called to the engineer and pointed to the pit, to show him that the earth train engine was not there, as he passed, witness called aloud and told him that the way engine was on the track; plaintiff made a sign with his hand which witness understood to mean that he would run the earth en-

gine to Alatoona sideling. The sign made for stopping plaintiff was the usual sign for stopping trains. Plaintiff disregarded the signal, and his engine and the earth engine came together about three miles from the embankment. Witness walked to the place when he heard the collision, thinks neither engine was thrown from the track. The earth engine belonged to the Western and Atlantic Railroad, but was controlled by the contractors for dong the work at the embankment; don't think the engineers would have been hurt if they had remained on the engines.

The testimony being closed, counsel for defendant requested the Court to charge the jury, that if plaintiff had hired himself to the Georgia Railroad, and that road had with his consent hired him to the defendant for the service in which he was employed at the time he received the injury, then plaintiff was the servant of defendant. That such contract need not be an *express* one; if in the usual course of dealing between them it had been customary for a compensation to be made for such services, then the law would imply a contract in the absence of proof of an express contract, and of any stipulation to the contrary. Which charge the Court gave with this qualification, to-wit: "But if the plaintiff was in the employment of the Georgia Railroad, and engaged in the business of that road for its benefit, and paid by that road for his services, the fact that he, during that trip, was subject to the orders of defendant, or its officers, and the fact that defendant paid the Georgia Railroad for said services, would not constitute plaintiff the servant of defendant in such sense as would bar his right to recover for injuries he received by the gross neglect and misconduct of the officers or employees of defendant, committed by them in the service of defendant.

To which charge counsel for defendant excepted.

The Court, amongst other things, further charged the jury, that to entitle plaintiff to recover, it was not necessary for him to prove any specific pecuniary damages, but that they could find such damages (if any) as under all the circumstances of the case, and the extent and nature of the injuries, they thought he was entitled to, but that they could not in this case give vindictive damages—counsel for defendant having requested him to charge that before plaintiff could recover, it was necessary for him to prove some pecuniary damages.

To which charge and refusal to charge, counsel for defendant excepted.

The jury found for the plaintiff thirty-five hundred dollars. Whereupon counsel for defendant moved for a new trial on the grounds of error in the charges and refusals to charge as above stated, and because the verdict was contrary to law and the evidence, and the damages found thereby excessive.

The Court overruled the motion for a new trial, and counsel for defendant excepted and assigns said refusal as error.

GLENN & COOPER, and BLECKLEY, for plaintiff in error.

J. M. CALHOUN & WM. EZZARD, *contra.*

*By the Court*—STEPHENS, J., delivering the opinion.

1. The general rule is, that whoever is injured by the negligence of a servant in his master's business, is entitled to redress from the master. The railroad, in this case, claims an exception against other servants of the same master. Such an exception has been recognized in some modern cases, but when confined within the reason on which it is founded, it can have no application to this case. That reason is one of public policy to secure to the public a more faithful service from employees on railroads, steamboats and other branches of business wherein the safety and property of the public are involved, by making it the interest of each one of such employees to look after and encourage the carefulness and fidelity of all the rest. This reason can have no application to employees whose situations allow them no connective influence over each other. The exception operates as a penalty, and to impose the penalty when there is no opportunity of exercising that supervising care which it is intended to enforce, is sheer cruelty. In the case of Scudder *vs.* Woodbridge, 1 *Ga. Rep.*, 195, this Court held that the exception did not extend to *slaves*, because slaves from their *status* were incapable of influencing their associate employees towards fidelity and care in the common business. Nor can it be extended to other employees who from *any cause* are not in a situation to exert such an influence on their fellows. It follows, therefore, that the cases to which this exception applies, are only those where the servant receiving the injury is en-

gaged with the servant inflicting it, in a common business where he has an opportunity to exercise a preventive care over his negligence.   In this case the person whose negligence produced the injury was on one train of cars, and the person who was injured was on *another train*, and had not the slightest possible opportunity of preventing the other's carelessness.   To hold the employees on different trains of cars responsible for the carefulness of each other seems to me about as reasonable as it would be to exact such a mutual responsibility between employees on different railroads, or in different quarters of the earth, because they might happen to be all servants of the same master.   The reason of the exception is to make each employee a help to the carefulness of the rest, and where that object cannot be accomplished, the exception ought to cease, and the general rule of giving redress against the master to everybody who may be injured by the negligence of his servant in the performance of his business ought to prevail.   But it is not even true that the two employees in this case were servants of the same master. The argument of the case mainly turned on this point, and therefore I will devote a few words to it, though notice of it is rendered unnecessary by the preceding view.   One of the engineers was in the pay of the Western and Atlantic Railroad, and the other, Mullins, who was injured, was in the pay of the Georgia Railroad, and at the very time when he was hurt was doing a job for which the Georgia Railroad, and not himself, was to receive pay from the other road. The Georgia Road furnished to the other an engine and engineer, that is to say, a team and driver for a single occasion.

Whose servant was that driver?   In the case of Laugher *vs.* Pointer, 5 *Barn & Cressw.*, 547, a stable-keeper had hired a team and driver to another person for a day, and the question was, whose servant was the driver?   The Court of King's Bench were equally divided, but Judge Story, in a note to sec. 4536, of his work on agency, says that all the subsequent cases have followed the opinion of those who held that the driver was the servant of him who had furnished him, and in whose pay he was, and not of him who had him but for a single occasion, who had no part in selecting him, and who was under no obligation to pay him.   The parallel between that case and this seems to be complete.   For these reasons a majority of the Court think that the doctrine relating to

servants of the same master is not applicable to this case, and that the charge asked on it might have been refused instead of being merely modified as it was by the Judge.

2. The errors assigned upon the refusal of the Judge to charge that some *pecuniary* damage must be proven, and upon the excessiveness of the damages found, may be considered together, for the same view covers both. Surely, there ought to be some compensation for the *suffering* endured. The pain from the wounds must have been great, and the dread of the approaching collision between the two engines, though brief, must have been terrible. Mental agony has been known to turn a head gray in a night, and gray hairs are often but the effervescence of some great mental anguish. Shall all compensation be denied to such, suffering merely because there can be no adequate compensation? We think not.

3. The ground that the verdict was contrary to the evidence rests upon its conflict with the testimony of Cole, tending to show that the accident was caused partly by negligence of the plaintiff himself. The engine which was in the wrong place had been put there by Cole's order, and he therefore testified under a strong motive to lighten the blame in that quarter and fix it upon Mullins. He made certain *signs* to Mullins, and Mullins made signs back to him, and the only important part of his testimony consists of the conclusions which he drew from Mullins' signs, as to the information which Mullins had got from his signs. Is it wonderful that the jury did not place implicit reliance upon such conclusions of a witness so situated?

Judgment affirmed.