[No. 2944. Decided June 22, 1898.]

JOHN HAMMARBERG, *Respondent*, v. ST. PAUL AND TACOMA LUMBER COMPANY, *Appellant*.

MASTER AND SERVANT — PERSONAL INJURY — FELLOW SERVANT.

A millwright employed to make repairs and alterations about a mill and a sawyer engaged in operating a saw therein are not fellow servants; and where the millwright, while employed in

making alterations in the mill, above where the sawyer is at work, leaves a heavy chisel on a beam, from which it is jarred by the vibration of the machinery, causing it to fall and injure the sawyer, the latter can recover from their common employer for the injuries sustained.

Appeal from Superior Court, Pierce County.—Hon. J. A. Williamson, Judge. Affirmed.

*Sharpstein & Blattner*, for appellant.

*Snell & Bedford*, for respondent.

The opinion of the court was delivered by

Dunbar, J.—The appellant is engaged in operating a lumber mill in Pierce county. The respondent was in his employ in the capacity of day laborer. A day or two before the occurrence of the injury for which he claims damages, the respondent was put to work on a cut-off saw in the mill, where he was working at the time the accident out of which the injury grew occurred. At the time the respondent went to work in the mill, millwrights were engaged in repairing some beams directly over the bench on which he was working. These beams were for the reception of shafting in connection with the lath mill, which was being removed from another part of the mill. The work of running the cut-off saw required no particular skill, any ordinary operator on the mill force being able to run this saw. One of the millwrights, Ninemire by name, had occasion to leave the work on which he was engaged for a few minutes, and he left on the beam which was over the bench on which respondent worked, and which, as we gather from the record, was a timber about ten inches square, a large chisel some two feet long and weighing, according to the testimony, from six to ten pounds. Presumably from the vibrations caused by operating the mill, the chisel fell off while respondent was stooping over get-

ting a stick to apply to the cut-off saw, and struck one of his legs, severely injuring him. For this injury this action was brought, and a recovery was had in the lower court.

Upon the conclusion of the respondent's testimony, a non-suit was asked by the appellant, which was refused by the court, and testimony was introduced by the defendant. There is no material conflict in the testimony. There is considerable testimony going to show that there were no particular vibrations, and that tools had been left on these beams and that they had never fallen off before; but this testimony is purely immaterial, for the reason that in this particular instance the chisel did fall off.

It is claimed by the respondent that it was the duty of the master to furnish a safe place for the workmen, and this proposition, of course, is not, and cannot be, questioned by the appellant. But the latter's contention is that the millwright, through whose negligence the chisel fell, was a fellow-servant of the respondent, and therefore that the master is not responsible. In fact, this is the sole question in the case.

The history of the doctrine of fellow servants is exceedingly interesting, but its reading forces upon the mind of the student the conviction that the application of the doctrine has been unwarrantably extended. Its original application was based upon the plainest principles of justice, and the doctrine was applied to persons who were working in a common employment and who had an opportunity to observe, if not to a certain extent control, the actions and methods of those with whom they were working and who were in reality, under the plainest definition of the term, their fellow servants. Thus, so far as rural employments were concerned, if two men were engaged in loading a wagon with hay, and it was so overloaded or so unskillfully loaded that it toppled over, thereby injuring

one of the laborers, the master could not justly be held
liable;  and the doctrine of fellow servants, for obviously
just reasons, was applied, for the laborers had in hand and
under their control the performance of this work and were
in a sense both of them agents or vice-principals of the
master.   In manufacturing employments it was the same.
The doctrine was applied simply and humanely on the
theory that, standing on a level with each other, both as
to employment and authority, they had notice which the
master necessarily could not have of the dangers liable to
result from the action of the workers;  and, in thus notic-
ing and continuing in the employment without an attempt
to rectify it, to them it was a disclosed or apparent danger,
the perils of which they assumed, and the doctrine of non-
liability of the master for the action of fellow servants
must be sustained upon this principle, if sustained at all.
But with the increasing of manufacturing and transporta-
tion business, with the complications arising from this in-
creasing business and the introduction of new methods and
new conditions, these plain principles, it seems to us, have
been lost sight of by many courts, or rather their application
has not been consistent with the changing conditions. Plain
terms have received artificial, instead of common sense and
practical, construction.   The result has been exactly the
opposite from the intention in the original application of
the rule, and employees have been unjustly held responsi-
ble for the actions of persons in whose employment they had
no authority, whose competency they had no way of test-
ing, over whose actions they had no advisory control and
no chance of observation, and, more than this, whose per-
emptory orders they were compelled to obey.   The result
has been that this principle, which in its primary appli-
cation was just and beneficent, has been made, by inhar-
monious and indiscriminate application, to work oppressive

wrong. It is gratifying, however, to observe that recently judicial opinion seems to favor a restriction of the doctrine of non-liability for the actions of fellow servants, and the English rule, that a servant in command is a fellow servant, has been repudiated by a great majority of the American cases, and it seems now to be pretty well established that, in order to constitute one a fellow servant, he must be in the same common employment with the one who has suffered from his negligence. Shearman & Redfield, Negligence (4th ed.), § 234. And the question of whether particular employees are fellow servants is in some states submitted to the jury. *Mullan v. Philadelphia & S. M. S. Co.*, 78 Pa. St. 25 (21 Am. Rep. 2).

The rule was announced in that case that the risk which the laborer assumes from the neglect of his fellow is where they are co-operating in the same business, so that he knows that the employment is one of the incidents of their common service. It has been held in Georgia that none are deemed to be in a common employment who have no opportunity to use precautions against each other's negligence. *Cooper v. Mullins*, 30 Ga. 146 (76 Am. Dec. 638). And this, we think, is in strict consonance with the just theory upon which the rule was first recognized.

Applying these principles to the case at bar, it seems to us that the millwright, in this instance, could in no sense be considered a fellow servant of the sawyer below. He was not in the same employment. He was not engaged in manufacturing lumber, which was the business of the mill. The sawyer had no opportunity to use precautions against his negligent acts. It is the conceded duty of the master to furnish a safe place for the employee to work in. If the original construction of these beams had been faulty, there is no question of the liability of the master. If this chisel had been left upon this beam when the mill was originally

constructed and before the manufacturing business commenced, and had fallen off upon one of the workmen, it cannot be said that the master had supplied the workman with a safe place to work. It would seem that, so far as the rights of the workmen were concerned, no different principle could be brought to bear against his interests, when the chisel which caused the injury was left upon the beam after he had gone to work, and because the construction which the millwright produced was produced after the original construction of the building.

In *Sadowski v. Michigan Car Co.*, 84 Mich. 100 (47 N. W. 598), the court said:

" The rule adopted by the federal courts, and in most of the states, and which seems to us most in consonance with reason and humanity, is that those employed by the master to provide or to keep in repair the place, or to supply the machinery and tools for labor, are engaged in a different employment from those who are to use the place or appliance when provided, and they are not therefore, as to each other, fellow servants. In such case, the one whose duty it is to provide and look after the safety of the place where the work is to be done represents the master in such a sense that the latter is liable for his negligence."

In *Nord Deutscher Lloyd S. S. Co. v. Ingebregtsen*, 57 N. J. Law, 400 (31 Atl. 619, 51 Am. St. Rep. 604) the court, in discussing this question, says, among other things:

" In determining whether an employé, through whose negligence defects in the machinery have failed of discovery or repair, is a representative of the master in the discharge of the master's duty to the servant, or is a fellow servant of the latter, engaged in a common employment, many incongruous decisions have been rendered. On this topic a rational distinction would seem to be that, when the employé's duty to inspect or repair the apparatus is incidental to his duty to use the apparatus in the common employment, then he is not intrusted with the master's duty to his fellow servant, and the master is not responsible

to his fellow servant for his fault, but that, if the master has cast a duty of inspection or repair upon the employé who is not engaged in using the apparatus in a common employment with his fellow servant, then that employé, in that duty, represents the master, and the master is chargeable with his default."

In this instance the master, through the millwright, was repairing or constructing a certain addition to this building. This was certainly a different employment from that in which the respondent was engaged, and the duty of the inspection of these repairs and of using the tools by which the repairs were made was a duty cast, by the very necessities of the employment, upon the millwright and not upon the sawyer. We think, therefore, that the millwright represented the master and, under the well recognized rule that the master cannot escape responsibility by delegating his power to another, we think the master in this instance was responsible for the negligent act of the millwright in leaving the chisel where it was liable to fall and injure workmen below.

We find no error in the giving or refusing to give instructions by the court, and the judgment will therefore be affirmed.

GORDON and REAVIS, JJ., concur.

ANDERS, J., not sitting.