[No. 18071.  Department Two.  February 15, 1924.]

ELIZABETH R. BRITTON, *as Administratrix etc.,*
*Respondent,* v. M. J. RUMBAUGH, *Appellant.*[1]

MASTER AND SERVANT (163)—INJURY TO SERVANT—CONTRIBU
TORY NEGLIGENCE—QUESTION FOR JURY.  Whether an employee in
a store was guilty of contributory negligence in entering an open
elevator door, before ascertaining the position of the elevator, is a
question for the jury, where it was the custom of the employees to
close the shaft door when the elevator was removed from the floor.

SAME (80)—FELLOW SERVANTS—DIFFERENT DEPARTMENTS.  A window trimmer who fell down an elevator shaft and the night watchman who left the shaft door open, are not fellow servants.

SAME (77)—FELLOW SERVANTS—VICE PRINCIPALS.  The negligence
of a night watchman in leaving an elevator shaft door open pertains
to the nondelegable duty of the master to keep the working place
safe.

APPEAL (389)—REVIEW—PLEADINGS—AMENDMENT.  A complaint
for wrongful death will be deemed amended to conform to proof,
admitted without objection, of the dependency of a wife and children upon the decedent for support.

Appeal from a judgment of the superior court for
Snohomish county, Alston, J., entered January 27,
1923, upon the verdict of a jury rendered in favor of
the plaintiff, in an action for wrongful death.  Affirmed.

*Coleman & Fogarty,* for appellant.

*Attwood A. Kirby, J. F. Reed,* and *Cooley, Horan &*
*Mulvihill,* for respondent.

FULLERTON, J.—Albert L. Britton, while an employee
of the appellant, M. J. Rumbaugh, fell into an elevator
shaft in the appellant's place of business and was
killed.  This is an action by his wife, as his personal
representative, to recover for his death, the recovery
to inure to the benefit of herself and the two minor sons

[1]Reported in 222 Pac. 899.

of herself and the deceased. From a judgment in her favor, the appeal is prosecuted.

The evidence which the jury were privileged to believe tended to show the following facts: The appellant, at the time of the death of Britton, was conducting a department store in the city of Everett. The store building was one hundred feet in width and one hundred and ten feet deep. It had four stories and a balcony to which the public were admitted and a basement used for the storage of the excess mercantile stock. It had two entrance ways from the street on which it faced, in one of which the employees of the store were required to enter and leave the store. From this entrance a passageway led through the store to an elevator near the back end of the building, the shaft of which led from the basement floor to the fourth story of the building. It was both a freight and passenger elevator, and was the one commonly used by the male employees of the store—some fourteen in number—in passing from one floor to another. The closing hour of the store was six o'clock in the evening. At that hour the night watchman came on duty, who stayed in the building from that time until six o'clock in the morning. His first duty was to visit all of several floors, close the openings to the fire escapes, close the windows and put out the lights. In doing this work he usually began at the upper story and worked down. In passing from one floor to the other he used the elevator mentioned. The night watchman, on the evening on which Britton met his death, entered the building at the usual hour at the entrance door usually used by the employees, proceeded to the elevator and lowered himself down to the basement floor, where he deposited his lunch basket, coat and hat. He then entered the elevator again and went up to the balcony floor to the

general office, where he got his watchman's clock, and from there took the elevator to the upper story and began his work. He had completed his preliminary work on the fourth and third floors and was working on the second when the accident happened which resulted in Britton's death.

Britton was an employee in the store in the capacity of window trimmer, store decorator and advertising man. He had been engaged there since the first day of July preceding his death, which happened on September 5, 1921. He had an office and work room on the upper floor, and usually reached it by the elevator mentioned. The store had advertised its annual fashion show to commence on Thursday of the week in which he was killed, and Mr. Britton had been very busy for some days preparing for that event. He had worked on a number of the evenings of the week immediately preceding the accident, on the Sunday immediately before, and on Monday, the day of the accident. He had been given a key to the store entrance, and sometime after six o'clock on Monday he returned to the store for the purpose of resuming his work, his wife accompanying him. They entered the door reserved to the employees and walked therefrom back to the elevator, following the passageway before mentioned, the husband in front. On reaching the elevator shaft, the door of the shaft was found open, and Britton, apparently in the belief the elevator was resting on that floor, entered the door and fell to the basement floor below, receiving injuries from which he died some five hours later. The storeroom, while perhaps not absolutely dark, was sufficiently so to make objects obscure, and whether the elevator was resting at that floor could not be determined without a somewhat careful inspection. It was the custom of the employees

using the elevator to close the shaft door on removing the elevator from the floor, and such also was the usual custom of the night watchman.

The appellant, at the close of the respondent's evidence in chief, and at the close of all of the evidence, challenged its sufficiency to sustain a verdict in favor of the respondent, and, after the return of the verdict, moved for judgment notwithstanding the verdict. The challenges were overruled and the motion was denied by the court, and its rulings thereon constitute the errors assigned.

The argument first to be noticed in support of the assignments is that the death of Mr. Britton was due to his contributory negligence. It is said that a person approaching an elevator in the situation here shown owed a duty before entering the elevator shaft to ascertain whether the elevator was in place or not, and failing in that duty could not himself complain if he is injured thereby, and in consequence his personal representative cannot complain if he meets with his death. But we think it plain that this was a question for the jury. It was shown that it had theretofore been the custom of the employees to close the shaft door when the elevator was removed from the floor, and Britton had been in the employ of the appellant a sufficient time to know of the custom. In the absence of a showing that this custom had not been generally followed, and that Britton knew that it had not, it cannot be said, as matter of law, that he was bound to ascertain the position of the elevator before entering the elevator shaft. *Perrault v. Emporium Department Store Co.,* 71 Wash. 523, 128 Pac. 1049; *Acres v. Frederick & Nelson,* 79 Wash. 402, 140 Pac. 370.

It is next argued that the proximate cause of the injury was the negligence of a fellow servant. But we

think it may be questioned whether Britton and the night watchman were in law fellow servants. While they were both in the employ of a common master, their work was separate and distinct. The one had no authority to supervise or direct the work of the other, nor opportunity to know whether he was negligent or careful in the performance of it or not. As we said in *Hammarberg v. St. Paul & Tacoma Lumber Co.,* 19 Wash. 537, 53 Pac. 727, the risk "which the laborer assumes from the neglect of his fellow is where they are cooperating in the same business, so that he knows that the employment is one of the incidents of their common service," but that "none are deemed to be in a common employment who have no opportunity to use precautions against each other's negligence." But the answer to the objection can perhaps be better rested on the authority of the case of *Acres v. Frederick & Nelson,* before cited. In that case a workman was injured by falling into an elevator shaft the doors of which had been left open by his fellow workmen. The negligence of the workmen was held to be the negligence of the employer, on the principle that it was his nondelegable duty to use reasonable care to keep the place safe in which he required his employees to work, and that it was not such care to leave open a door to an elevator shaft where the shaft was in such a position as to expose the employee to danger.

Finally, it is argued that there is no allegation in the complaint, and that there was no proof at the trial, that the respondent and the minor sons of herself and the deceased, Britton, were dependent upon him for support. As no specific objection was taken to the complaint on this ground in the court below, and no objection to the introduction of evidence based on this ground, it is immaterial whether the complaint is silent

on the question or not, as the complaint will be deemed to have been amended to correspond with the proofs. On the fact of dependency, we think the proofs were ample in that regard. While the evidence seems not to have been particularly directed to the question, the tenor of the evidence as a whole showed that the respondent wife and the minor sons of herself and the person killed, were so dependent, and in addition to this there is the direct statement of the respondent to the effect that the family lived from the earnings of the deceased gained in the pursuit of his calling.

There is no reversible error in the record and the judgment will stand affirmed.

MAIN, C. J., MITCHELL, PEMBERTON, and BRIDGES, JJ., concur.