32   319
s35   296

[No. 4640.   Decided July 21, 1903.]

MARTIN BAILEY, *Appellant,* v. CASCADE TIMBER COMPANY, *Respondent.*

MASTER AND SERVANT — NEGLIGENCE — SAFE APPLIANCES.

Where plaintiff, an engineer in charge of a donkey engine in a logging outfit, was injured by the breaking of a small and defective swamp hook, used to pull a large water tank, and the large swamp hook usually employed for that purpose was at the time attached to the donkey, holding a block in place, and no other hook was provided by the master, it is not a case of the proper selection by a servant from sufficient appliances concededly furnished by the master, but there was a dispute as to whether the master in the first instance had furnished the necessary available appliance, raising a question of negligence for the jury.

SAME — VICE PRINCIPALS.

A foreman known as the "hook tender" in charge of a logging crew, whose duty it was to give directions both as to the operations and selection of appliances for moving from one location to

another a donkey engine and a large water tank containing 600 or 700 gallons of water, by means of a swamp hook attached to a cable pulled by the engine, is, under the circumstances, a vice principal in his relations to the engineer and men of the crew and is charged with the duty of providing a sufficient swamp hook.

SAME.

Where such hook tender directs a laborer known as the "rigging slinger" to attach the swamp hook for the purpose of moving the water tank, the "rigging slinger" is a mere intermediary and the arm of the hook tender, and his negligence in selecting an insufficient swamp hook is the act of a vice principal and not that of a fellow servant.

SAME.

In such a case where the hook tender is in the immediate presence of the tank, and the large hook was only a few feet away, he owed the duty to see that the same was used.

SAME — SELECTION OF APPLIANCES.

A selection from sufficient appliances actually furnished by the master, made by the person whose duty it is to make the selection, or made under his direction, is the act of a vice-principal, and in this case raises a question of negligence for the jury, conceding that sufficient appliances were furnished.

SAME — CONTRIBUTORY NEGLIGENCE.

The contributory negligence of the engineer in starting up the engine with a hard pull without first taking up six or seven feet of slack in the cable, as was usually done, is a question for the jury, where there was evidence that he obeyed the signal of the foreman for a hard pull, and also that the defective hook would have broken with any kind of a pull.

SAME.

Contributory negligence of the engineer, in that he knew of the use of the small swamp hook and did not object to it, is a question for the jury, where he denies such knowledge.

SAME — APPEAL — DECISION — QUESTION FOR JURY.

In such a case, upon reversal, a motion to remand with instructions to have the damages assessed will be denied, as the questions of negligence and contributory negligence must be all submitted to the jury.

Appeal from Superior Court, Pierce County.—Hon. WILLIAM H. SNELL, Judge. Reversed.

*Govnor Teats,* for appellant.

*Fogg & Fogg* and *E. M. Hayden,* for respondent:

The choosing of an appliance from among sufficient appliances furnished by the master is the act of a fellow servant, for which the master can not be held liable. 12 Am. & Eng. Enc. Law (2d ed.), 953; 20 Am. & Eng Enc. Law (2d ed.), 78; *Prescott v. Ball Engine Co.,* 35 Atl. 224; *Young v. Boston & M. R. R. Co.,* 46 N. E. 624; *Van den Heuvel v. National Furnace Co.,* 84 Wis. 636; *Webber v. Piper,* 109 N. Y. 496; *Carroll v. Western Union Tel. Co.,* 160 Mass. 152; *Kehoe v. Allen,* 92 Mich. 464; *Ling v. St. Paul, M. & M. Ry. Co.,* 50 Minn. 160; *Dwyer v. Hickler,* 16 N. Y. Supp. 814; *Thyng v. Fitchburg,* 156 Mass. 13; *Rawley v. Colliau,* 90 Mich. 31; *Guggenheim Smelting Co. v. Flanigan,* 41 Atl. 844.

Where such duty is incidental to the use of the apparatus, it is not the duty of the master to see that the servant is diligent in using the right appliances. *Hammarberg v. St. Paul & Tacoma Lumber Co.,* 19 Wash. 542; *Nord Deutscher Lloyd S. S. Co. v. Ingebregsten,* 57 N. J. Law, 400; *Moynihan v. Hills Co.,* 16 N. E. 577; *Preston v. Chicago & W. M. Ry. Co.,* 98 Mich. 128; *Teetsel v. Simmons,* 34 N. Y. Supp. 972; *Richmond & D. R. R. Co. v. Dickey,* 16 S. E. 212; *Burns v. Washburn,* 36 N. E. 199.

The opinion of the court was delivered by

HADLEY, J.—Appellant was employed by respondent as the engineer of what is known as a "donkey steam engine." The engine was operated in respondent's logging camp for the purpose of moving and loading logs. In

the course of logging operations it became necessary from
time to time to remove the engine from one location to an-
other.    It stood upon pieces of timber adjusted some-
what as the runners of a sled.    Its removal was accom-
plished by means of the mechanism of a strong
cable with hooks and pulleys so operated by the power
of the engine itself that it could be slid from one point
to another.    A large water tank, with a capacity of one
thousand gallons, was used for the purpose of storing
water for use in supplying the engine with steam.    The
tank was also placed upon timbers so that it could be
removed by the power of the engine in a similar manner.
The removal of the engine to a new location had just
been accomplished, and while in the act of moving the
tank a swamp hook used to connect the cable with the
tank timbers broke.    The cable recoiled, and flew toward
the location of the engine in such a manner as to strike
appellant with great force, and he was thereby severely
injured.    He brought this suit to recover damages for his
injuries.    He alleges that in the operation of the said
logging business the respondent had a crew of several
men in charge of one Fitzpatrick, who was known as
"hook tender;" that in the selection of appliances for the
removal of the tank the said hook tender negligently and
carelessly selected a swamp hook that was too small for
the strain necessary to pull the tank, instead of selecting
a large swamp hook for the purpose, as was his duty;
that the swamp hook so selected was defective, in that
the weld of one of the links was not properly made; that
when the tank had reached a stated point, and while
the rear end was elevated and the front end was down
against a mound of earth and roots, with the said small
and defective hook attached to it for the purpose of pull-

ing it, the said hook tender, then acting as signal man, and being in full charge, control, and operation of the hauling of the tank, negligently and carelessly gave the appellant, as the engineer of said engine, the signal which was meant and is understood to be a command to the engineer to turn the power of the engine on at full force; that, in obedience to said command and signal, appellant did turn on the full force of the engine, and thereupon the break occurred which caused his injuries. The answer affirmatively avers that the selection of the appliance which was used was with the knowledge and without the objection of appellant, and that he thereby contributed to his own injury. The latter allegation, we think, is sufficiently put in issue by the reply, although respondent suggests that the reply is insufficient as a denial thereof. It is also alleged that the selection of the appliance was made by a fellow servant, and that the negligence was that of a fellow servant. The cause was tried before a jury, and at the close of all the evidence of both parties respondent moved the court to discharge the jury and render judgment for the defendant, which motion was granted. Judgment of dismissal was entered, and the plaintiff has appealed.

Several alleged errors are discussed by appellant's counsel, relating to the court's rulings upon motions, some of which were interposed by appellant and some by respondent. For the present, however, we will discuss the motion of respondent to discharge the jury and render judgment of dismissal. It is not contended by respondent that the swamp hook which was used was of sufficient strength for the purpose to which it was applied, and we understand it to be actually conceded that it was not the proper appliance that should have been selected upon that

occasion. It is respondent's position, however, that the selection was made by a fellow servant; that the negligence which was the proximate cause of the injury was that of a fellow servant, and that the same was not caused by any negligence of the respondent as master. It is not even disputed in the evidence that the hook tender was in charge of the crew of men at that time, and that, as superintendent, it was his duty to give directions both as to the operations of the men and as to the selection of appliances that were used to assist them. The man whose delegated business it was to adjust the rigging and attach the cable by means of the hook to the tank was called the "rigging slinger." He was under the immediate direction of the hook tender, and was supposed to follow the latter's directions both as to the appliances selected and as to the manner of adjusting them. When the adjustment was made, it was the duty of the hook tender to give to the engineer an understood signal for starting the engine. While the rigging slinger was engaged in adjusting the rigging under the direction of the hook tender, the appellant, as engineer, was at his post at the engine, which he says he was oiling while waiting for the customary signal. The hook tender directed the rigging slinger to attach the cable to the tank by means of a swamp hook, not specifying whether it should be a large or small swamp hook. The small swamp hook was lying upon the top of the tank, which hook the rigging slinger took down and used to make the attachment. The hook tender meanwhile was in the immediate vicinity, and he says he supposed a large swamp hook had been used. When the attachment was made the rigging slinger notified the hook tender that all was in readiness, and the latter then gave to appellant, his engineer, a starting signal. The evi-

dence shows that the customary signal for starting slowly was for the signalling party to raise both hands, which meant that the engineer should pull very slowly. One hand up was the signal for the hard pull, which meant that he should pull as hard as the engine could stand. The shaking or jerking of one hand when up was the signal for the hard and fast pull, which meant to pull as hard and fast as the engine could stand. The engineer received his orders by means of the signals, and was governed entirely thereby. It was his duty to obey the signals unless he was advised of some imminent danger should he obey the same. It was the testimony of appellant and of most of the witnesses that the hook tender in this instance gave the signal by raising one hand, which meant that appellant should cause his engine to pull hard. The hook tender disputes this, but it was at most merely a disputed question before the jury, and for the purposes of the motion now under consideration it must be assumed that the signal given was for the hard pull. The appellant says he started his engine in obedience to the signal for the hard pull, when the break occurred which led to his injury. The evidence shows that a large swamp hook was attached to the donkey and was holding a block in place, through which the main line ran. We discover no evidence that any other large swamp hook was available at that time. Respondent contends that this hook was not actually needed in that place, and could have been selected by the rigging slinger and attached to the tank, and, as the fellow servant of appellant, his neglect to do so cannot be charged to respondent. The large hook was, however, being used at the time for the purpose mentioned, and whether its use at the place named was necessary was really a disputed question, which it was

proper for the jury to determine.   If it was required
where it was, then it followed that respondent had fur-
nished no large swamp hook that was available for use
at the tank, and it was for the jury to  say  whether
such neglect was the proximate cause of appellant's in-
juries.   It is a well settled rule that it is the duty of the
master to furnish reasonably safe and sufficient machinery
and appliances for the prosecution of the work required
of his employees.   Under the evidence as it stood, there
was, therefore a dispute as to whether the master in this
instance had furnished the necessary available appliance.
It was not a case where it was conceded that the neces-
sary appliances had been furnished by the master, and
that nothing remained but to make proper selection there-
from by the servant.

We think the relations of the hook tender to the crew
of men, as stated above, were such as made him what is
ordinarily called a vice principal, and that he then stood
in the place of the master.   He directed the men, and de-
termined both what appliances should be used and the
method of adjusting them.   It may be true, as argued
by respondent, that he could not, in reason, have person-
ally inspected and overseen all small details, and that
such might have been properly left to the judgment of
the fellow servants.   On the other hand, it may also be
reasoned that the detail here involved was not small or
unimportant. It called for the selection and application of
devices that would ordinarily be deemed sufficient to pull
a large tank then containing from 600 to 700 gallons
of water in addition to its own weight, and which, from its
position, must also plow its way through a mound of earth
and roots in front of it.   We think the circumstances were
such that it ought not to be said that the selection of appli-

ances could properly be left to the judgment of a fellow servant, but that such duty properly rested with the master, acting through a directing mind, supposed to be skilled from experience in such matters. The hook tender says, however, that in directing the swamp hook to be used he meant the large one, which was ordinarily used for such pulls, and supposed the rigging slinger had used it. He was, however, in the immediate presence of the tank where the small hook was lying, and also where it was afterwards adjusted by the rigging slinger. The large hook at the engine was but a few feet away, and he could easily have seen, before starting a pull requiring such great force, that the proper appliance had actually been used. Under such circumstances it certainly should not be said that, as representing the master, he owed no duty to the appellant and others present, whose safety was involved, to actually see that the proper appliance to secure such safety had been put in its place. If the large swamp hook was at that time available for use, he could have withheld movement until he knew it was in place; and if that hook could not be removed from the position it then occupied without seriously interfering with the operation of the moving mechanism, then there is evidence to the effect that it was his duty not to direct any movement at all. When the hook tender directed the rigging slinger to select and adjust the hook, he used him as a mere intermediary for that purpose, and as such he was but the arm of the hook tender, the vice principal, and was not a fellow servant. The selection and adjustment of the appliance was, therefore, in effect done by the vice principal himself, and he thereafter gave appellant the starting signal. If that signal was wrong when viewed in connection with the mechanism applied, then the master was guilty of negli-

gence. *Sroufe v. Moran Bros. Co.,* 28 Wash. 381 (68 Pac. 896, 58 L. R. A. 313). That the hook tender in the case at bar was a vice principal is sustained by the above case, and also by the following, as well as other decisions of this court not cited: *Nelson v. Willey Steamship & N. Co.,* 26 Wash. 548 (67 Pac. 237); *Uren v. Golden Tunnel Mining Co.,* 24 Wash. 261 (64 Pac. 174); *Allend v. Spokane Falls & N. Ry. Co.,* 21 Wash. 324 (58 Pac. 244); *Hammarberg v. St. Paul & Tacoma Lumber Co.,* 19 Wash. 537 (53 Pac. 727).

It has already been stated that it is disputed in this case that respondent, as master, had actually furnished the necessary available appliance in the way of a large swamphook. But, assuming that it had done so, as respondent insists, then the recent case of *Wall v. Marshutz & Cantrell,* 138 Cal. 522 (71 Pac. 692), decided by the supreme court of California February 19, 1903, seems to be particularly in point here. There one was injured, while employed in a foundry, by the falling of an iron plate, which fell by reason of a defective clamp, selected by the person who had charge of the selection of the tools used in the work. It was contended that, since the ordinary and usual appliances for lifting weights had been furnished by the master, the selection of the particular clamp used was the act of a fellow servant. The court, however, held that the selection made was the act of a vice principal, since the duty rested upon him to select the tools for doing the work from among those furnished by the master. Such was the duty of the hook tender in the case at bar. The selection was made under his direction, and, as we have seen, was in effect his own act. We approve the rule of the California case, and it follows that, whether the case at bar be viewed as one where the master had

actually furnished proper appliances or whether it had neglected to do so, there were questions of negligence under the evidence, which should have been submitted to the jury.

Respondent insists that the evidence shows contributory negligence on the part of appellant as the proximate cause of his injury, and that it should be held as a matter of law that he is not entitled to recover. It is claimed that the cable had six or seven feet of slack at the time he started the engine, which appellant knew and saw; that he started with the hard pull, which caused a sudden strain upon the cable when the slack was drawn in. It is insisted that the usual manner of starting was first slowly to draw in the slack, and then begin the hard pull. It is also insisted that the appellant contributed to his injury because he knew of the use of the small swamp hook, and did not object to it. These questions of contributory negligence we think under the evidence are such as should be submitted to the jury, and that it should not now be determined as a matter of law that appellant is not entitled to recover because of his own negligence. There is evidence to the effect that the hook which was used was insufficient to have withstood any kind of hard pull upon as heavy a weight as the tank, without regard to the manner of starting, and that no signal for any kind of start should have been given. Appellant also denies that he knew that the small swamp hook was being used.

Since, for the reasons above given, the case must be reversed, we do not deem it necessary to discuss other alleged errors. Doubtless before another trial appellant's application to amend his complaint in certain particulars asked will be granted. The refusal at the time of the trial was based upon the ground that it came too late, and was a surprise to respondent.

Appellant moves this court to reverse the judgment of nonsuit and dismissal, and for an order directing the lower court to proceed to trial merely to determine the amount of damages. The motion is based upon the alleged ground that the evidence conclusively shows negligence on the part of respondent as the proximate cause of the injury. The motion, in so far as it asks for an order directing a trial to fix the amount of damages only, is denied. The questions of negligence and contributory negligence should all be submitted to a jury. In that manner only can a jury intelligently fix the amount of appellant's damages, if he is entitled to recover.

The judgment is reversed, and the cause remanded with instructions to the lower court to retry it.

FULLERTON, C. J., and MOUNT, ANDERS and DUNBAR, JJ., concur.