[No. 5125. Decided July 2, 1904.]

MARTIN BAILEY, *Respondent,* v. CASCADE TIMBER
COMPANY, *Appellant.*[1]

MASTER AND SERVANT — NEGLIGENCE — SAFE APPLIANCES — IN-
STRUCTIONS—SUFFICIENCY. In an action for personal injuries
sustained by an employe upon the breaking of a swamp hook,
instructions sufficiently submit to the jury the question whether
defendant furnished proper appliances, where the jury are told
that the burden of proof as to whether defendant furnished a
reasonably safe swamp hook was upon the plaintiff, and that
the plaintiff could not recover unless that was shown to be the
proximate cause of the injury.

SAME—SELECTION OF APPLIANCES—APPEAL—DECISION—LAW OF
THE CASE. The supreme court having decided upon a former
appeal that the removal of a heavy tank was not a mere ordinary
detail of the work of a logging crew that could be delegated

[1]Reported in 77 Pac. 377.

to fellow-servants of the plaintiff, the same becomes the law of the case and is conclusive.

SAME—FELLOW-SERVANTS—DELEGATED DUTIES—IMMATERIAL BY WHOM DISCHARGED. The supreme court having decided upon a former appeal that a hook tender charged with the duty of selecting a proper swamp hook to be used in moving a heavy tank is not a fellow-servant, but a vice-principal with respect to such duties, it is immaterial whether that duty was discharged by him or by some other employe, as in either case it is a duty owed by the master.

DAMAGES — EXCESSIVE VERDICT — POWER OF TRIAL COURT TO REMIT EXCESS—NEW TRIAL. Where the trial court was of the opinion that the damages for personal injuries awarded by the jury were excessive, it has power to require the plaintiff to remit the excessive amount or submit to a new trial.

DAMAGES—WHEN EXCESSIVE. Where $6,000 was awarded for personal injuries sustained in the fracture of the ulna and a dislocation of the head of the radius, resulting in limiting the turning motion of the forearm, but which did not destroy the usefulness of the arm or greatly lessen plaintiff's earning ability, a finding of the trial court that the verdict was excessive and should be reduced to $4,000 will be sustained.

Appeal from a judgment of the superior court for Pierce county, Snell, J., entered December 14, 1903, upon the verdict of a jury rendered in favor of the plaintiff for $6,000 damages for personal injuries sustained by the breaking of a swamp hook. Affirmed on condition of remitting $2,000.

*John A. Shackleford* and *E. M. Hayden,* for appellant.

*Govnor Teats,* for respondent.

HADLEY, J.—This case was once before in this court, and the opinion upon the former appeal will be found reported in 32 Wash. 319, 73 Pac. 385. For a statement of the issues and facts, we refer to that opinion without repetition here. At the first trial, when the evidence of both parties had all been introduced, the defendant moved

that the court discharge the jury and render judgment for the defendant, which motion was granted. This court reversed the judgment on the ground that there was evidence which should have been submitted to the jury, and the cause was remanded for a retrial. At the second trial the jury returned a verdict for the plaintiff. Thereupon the defendant moved for a new trial, which was denied, and judgment was entered in accordance with the verdict. The defendant has appealed.

Many alleged errors are assigned relating to the instructions given by the court and to the refusal to give certain requested instructions. In argument appellant groups what it claims to be the principles involved in its assignments of error under the following general statement:

"Appellant contends that whether proper appliances for moving the tank had been furnished by the master was a question for the jury; whether the work of moving the tank was an ordinary detail of the work of the crew was a question for the jury; and that it was for the jury to say whether it was the duty of the hook tender to select, from those on hand, the appliance to be used in attaching the line to the tank, or whether such selection was a part of the duty of the rigging slinger, as an incident to his duty to use and attach the appliance. By the instructions, all of these questions were taken from the jury."

The different assignments relate to segregated parts of the instructions. It is our duty to examine the instructions as a whole and determine whether, when construed together, they fairly state the law applicable to the case. Referring to the first proposition included in the above statement of counsel—that is to say, that it was a question for the jury whether proper appliances had been furnished by the master—the court did specifically state to the jury, that one of respondent's allegations was that appellant had neglected

to furnish a reasonably safe and suitable swamp hook or appliance for the work to be performed in the removal of the tank; that the burden of proof as to the respondent's allegations was upon him; and that, even if the jury should find the defendant negligent in not having furnished suitable appliances, still respondent was not entitled to recover for the wrong alleged, unless it was shown by the evidence to be the proximate cause of the injury. We think the instructions sufficiently left it with the jury to say whether suitable appliances had been furnished or not.

The next criticism as to the instructions, suggested by counsel's statement, is that it was a question for the jury whether the work of moving the tank was an ordinary detail of the work of the crew, it being contended that, if it was such, then the duty of the master did not extend to the supervision of details such as the selection of appliances, and that injuries arising from such circumstances should be held to be due to the neglect of a fellow-servant, and not of the master. We said of the circumstances of this case, when it was here before, as follows:

"We think the circumstances were such that it ought not to be said that the selection of appliances could properly be left to the judgment of a fellow-servant, but that such duty properly rested with the master, acting through a directing mind supposed to be skilled from experience in such matters."

It will be remembered that the station of respondent, at the location of the donkey engine, was such that his safety depended upon the security of the appliances used to connect with the heavy tank. He was at a distance from the tank, and his duty called him to remain at his post ready to control his engine, in accordance with signals given him. He had not the opportunity to inspect the appliances used unless he left his post for that purpose, and such was not

his duty. His situation was such that, if the appliance broke, the large cable would recoil toward him, involving him in much danger, as the result proved. It was because of such peculiar surroundings that we before held it to be the duty of the master to select the appliances, acting through a directing mind skilled from experience in such matters. Under that view of the case, which we reiterate here, the removal of this heavy tank cannot be classified as a mere ordinary detail of the work of the crew to be left entirely with fellow-servants, and calling for no immediate duty from the master. This view had become the law of the case at the last trial, and the question whether the removal of the tank was a mere ordinary detail of the work of the crew was therefore not one for the jury.

Counsel's next suggestion of error is that the court should have left it to the jury to say whether it was the duty of the hook tender to select, from appliances on hand, the one to be used, or whether such selection was a part of the duty of the rigging slinger, as an incident to his duty to attach the appliance. This contention also seeks to classify the rigging slinger as a fellow-servant in charge of the detail of selection, with the master relieved from any share in the duty. The facts in evidence were in all material respects the same as were before this court on the former appeal. We then declared the relations of the hook tender to the crew of men, and the duties he admittedly discharged to be such as made him a vice-principal, for the reason that it was his duty to direct the men to determine what appliances should be used, and the method of adjusting them. Such being the case then, as we held before, the duties discharged by the rigging slinger pertaining to the selection and adjustment of appliances were delegated duties, and passed to him from the hook tender, the master's primary representative.

The environment called for the exercise of skill and a high degree of care in order to preserve the safety of life and limb, and which should have been exercised by the master or his representative. It therefore became immaterial whether the immediate act of selection was done by the hook tender or by the rigging slinger, since, in either case, it was a duty of the master which was being discharged. We think the instructions as a whole fully and fairly stated the law of the case, and we find no error.

Appellant next urges that the verdict was excessive. The amount returned was $6,000. Respondent's injury consisted of a fracture of the ulna of the forearm and a dislocation of the head of the radius. The turning motion of the forearm was somewhat limited by the injury, although not destroyed, and respondent is also unable to bend the arm at the elbow to the full extent. The injury was severe, and the condition resulting therefrom undoubtedly entails much inconvenience to the respondent, but the arm is still useful for many purposes. Respondent himself testified that, during the time intervening between the two trials of this case, he was a part of the time engaged in cutting wood. He also said he was able to earn about $700 per year before the accident, and that, for about five weeks prior to the last trial, he had been earning more than $2 per day—$2 net after paying car fare. It would thus appear from his testimony that his present earning capacity is not greatly less than it was before the accident. He has, however, a crippled arm, which he must carry through life, and, at best, either his earning power is in some degree impaired, or he must undergo great inconvenience, with the possibility of increased impairment with advancing years. Under such circumstances, the jury having determined other questions in his favor, he is entitled to recover a substantial amount,

based, however, upon the nature of his injury, and its bearing upon his usefulness. The trial court was of the opinion that the verdict is excessive, and so found. The following appears in the order denying the motion for new trial:

"The court finds: That the verdict of the jury was excessive, unreasonable, and exceeded in amount the damages sustained by the plaintiff, and that the amount of said verdict should not in any event exceed the sum of four thousand dollars ($4,000); but that this court has no power to reduce said verdict without granting a new trial; and that with the findings heretofore made in this order, the supreme court can pass upon the question of the excessiveness of said verdict without prejudice to the rights of the defendant, by reason of the refusal of this court to grant a new trial."

We think it was within the power of the trial court to have required respondent to remit the excessive amount or submit to a new trial. But the court declined to do so, seemingly under the belief that it had not such power. It is therefore for this court to determine whether it will confirm the court's finding, as made in its said order concerning the excessive amount of the verdict, or whether it is excessive in any amount. Taking into consideration the evidence as above discussed, together with the fact that the trial court heard the witnesses testify, and more particularly observed the nature of respondent's injury, we shall adopt the views of that court as to the excessive amount.

The judgment is approved in all particulars except as to amount. But, as entered, it is reversed, and the cause remanded with instructions to the lower court that, within thirty days from the time the remittitur is filed in that court, it shall, in the alternative, require respondent to file a remittance of $2,000 from the amount of the verdict, or submit to a new trial. In the event such remittance shall be filed within the specified time, judgment shall then be

entered for $4,000, and if respondent shall refuse to file such remittance, the motion for new trial shall be granted. Appellant shall recover the costs of this appeal.

FULLERTON, C. J., and ANDERS and MOUNT, JJ., concur.