[No. 6176. Decided July 27, 1906.]

EDWARD SULLIVAN, *Respondent,* v. R. D. WOOD & COMPANY, *Appellant.*[1]

MASTER AND SERVANT — NEGLIGENCE — EVIDENCE — SUFFICIENCY. Where an employee in the construction of a gas tank was injured by the falling of a wedge used in the raising of a girder, under which he was compelled to stand in assisting in the work, the negligence of the master is for the jury, where there was evidence that the wedge was objected to as too small, but was selected by the superintendent and was adjusted by the foreman in charge of the work, and would not have fallen if driven in from the upper side, instead of from the lower.

SAME—TRANSITORY PERIL. Such an accident cannot be said to be a transitory peril, where the adjustment was made while the plaintiff was otherwise engaged and he was immediately called to stand under it to hold a guide rope, since the plaintiff had a right to rely on the safety of the wedge.

SAME—CONTRIBUTORY NEGLIGENCE. The question of the contributory negligence of an employee assisting in the construction of a gas tank, who was required to stand upon a narrow walk-around 26 feet above the ground and underneath a girder that was being raised, is for the jury, where it took several minutes to raise the girder, and plaintiff testified that he could not look up all the time, and was injured by the fall of a wedge used to adjust the girder.

SAME—ASSUMPTION OF RISK—INSTRUCTIONS. An instruction as to the knowledge of danger to be imputed to a servant from the obvious nature of the risk, limiting the same to one of ordinary care "with the same knowledge and experience as plaintiff has," is not erroneous where it appeared that he was possessed of a reasonable amount of experience, etc.

SAME—ACT OF VICE PRINCIPAL—ASSISTANCE IN WORK. The act of adjusting a wedge for the purpose of raising a girder, and of selecting a proper wedge, performed by the superintendent and foreman

[1]Reported in 86 Pac. 629.

in charge of the work, is not the act of a fellow servant from the mere fact that it could have been performed by a fellow servant; but when such an act is done by the master or his representative, it is the act of the master for which he is liable.

SAME—OBEDIENCE TO COMMANDS—INSTRUCTIONS. An assurance by a vice principal after objections by the plaintiff, that an appliance is safe, and a direction to him to do a certain act, justifies an instruction as to plaintiff's rights, when acting in obedience to a command.

APPEAL AND ERROR—REVIEW—HARMLESS ERROR—INSTRUCTIONS. A general instruction upon the duty of the master to provide a safe place, objectionable from lack of elaboration as applied to the facts of the case, is harmless where a subsequent instruction amply qualified the same with reference to such facts; and as a whole the jury could not have been misled.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered December 15, 1905, upon the verdict of a jury rendered in favor of the plaintiff for personal injuries sustained by an employee engaged in constructing a gas tank. Affirmed.

*T. L. Stiles,* for appellant.

*Ellis & Fletcher* and *Robert E. Evans,* for respondent.

HADLEY, J.—This is an action to recover damages for personal injuries. The complaint alleges that the defendant was engaged in constructing a gas tank for a gas company in the city of Tacoma, and that the plaintiff was employed to assist in the work; that there was built around the tank and as a part of it about twenty-six feet from the ground, a platform arrangement, known as a "walk-around," about two and one-half feet in width; that plaintiff and other employees of defendant were upon said walk-around, and were directed to assist in hoisting therefrom an iron girder, the girder being so constructed that it required a wedge to be used to hold it open and in place while hoisted ready for subsequent adjustment; that for said purpose the defendant threw upon the walk-around where plaintiff was standing, a wedge, but that the same was insufficient and too small for the purpose, and

that plaintiff refused to use it for fear that when the girder
was hoisted in the air the wedge would slip through; that
plaintiff then stated to defendant that the wedge was too
small, but that the defendant thereupon assured him that
it was sufficient and safe for use; that the defendant itself
undertook to adjust and place the wedge in a safe and secure
manner, and then caused the girder to be hoisted to a dis-
tance of some thirty feet above the walk-around, where the
plaintiff and other employees were standing; that when the
girder had been so hoisted, the plaintiff was ordered to take
a position under the girder, and under the wedge which had
been placed therein, and to hold the girder in place by means
of a rope; that relying upon defendant's assurances that the
wedge was sufficient, and believing that it had been properly
and securely adjusted, plaintiff took said position and was
holding the girder in place as aforesaid; that while so doing,
the wedge, on account of not being sufficiently large and on
account of its having been carelessly and negligently adjusted,
slipped from the opening in the girder and fell, striking plain-
tiff upon his lower jaw, breaking his jaw, knocking out two
teeth, lacerating the right side of his face, chin, and lower
jaw.

The answer denied the material averments of the com-
plaint, and affirmatively alleged negligence on the part of
the plaintiff and, also, that plaintiff represented himself to
be an experienced workman, and that he knew the work in-
volved the risk of danger; that the wedge slipped and fell
by reason of the action of plaintiff or of his fellow employees,
and without any fault or negligence on the part of defendant.
The cause was tried before the jury and resulted in a verdict
for plaintiff for the sum of $1,000. Judgment was entered
upon the verdict, defendant moved for a new trial, which
was denied, and this is defendant's appeal from the judg-
ment.

It is first assigned that the court erred in denying appel-
lant's motion for a nonsuit at the close of respondent's evi-

dence. The evidence then before the court and jury was to the effect that respondent was employed as a helper, and that the work of appellant was, at the time of the accident, in charge of Mr. Beaston as superintendent, and also of a Mr. Campbell as foreman. It showed that the position and surroundings of respondent were substantially as stated in his complaint, reference to which is above made. Both respondent and another witness testified that respondent at first objected to the use of the wedge on the ground that it was too small, but that Beaston, the superintendent, was present on the ground below the walk-around and directed that it should be used and said it was all right. It was also testified that respondent started to put the wedge in place as directed, but that it fell out, and that he then told Campbell, the foreman, who was upon the walk-around, that it had fallen out, and the latter then directed respondent to get a piece of rope and tie a wrench to be carried up with the girder, saying at the same time that he, Campbell, would adjust the wedge; that when respondent returned, Campbell had adjusted the wedge, and respondent relied upon his judgment and skill in the matter. The wedge was driven in from the under side of the girder, and the witnesses said that, if it had been driven from the upper side, it would not have fallen through. Immediately after the above stated occurrences, the girder was hoisted by power supplied for that purpose, and respondent, as directed, held a guide rope to keep the girder in place as it ascended. Two men, one upon each end of the girder, were carried up with it, for the purpose of adjusting it when in position. During the ascent the wedge fell, with the results stated.

It is argued that, from the above testimony, no negligence of appellant appeared, and that the falling of the wedge was a mere incident of the work in which respondent was engaged, a transitory peril for which the master is not liable. We think the court did not err in refusing to hold, as a matter of law, that no negligence of appellant appeared. Under the

testimony the use of the particular wedge was directed by
the superintendent of appellant, and the foreman who was
in charge upon the walk-around adjusted it himself, and
both assured respondent that it was all right and safe. The
selection of the appliance and its adjustment for use were
both made by the direct representative of the master, and
therefore became the acts of the master. Whether those acts
were the cause of the injury was for the jury and not for
the court. If the injury was traceable to acts of appellant
as testified, then appellant was negligent. Respondent had
a right to rely upon the safety of the appliance selected and
adjusted by the master itself, accompanied with assurances
as to its sufficiency, the immediate placing and adjustment
having been made while respondent was otherwise engaged,
and he being immediately thereafter called to action in the
way of holding the guide rope.

The question of contributory negligence on the part of
respondent was also for the jury. On the narrow walk-
around, twenty-six feet above the ground, respondent was
necessarily required to stand under the ascending girder.
The testimony showed that it took several minutes to hoist
the girder, and respondent said that he could not look up all
the time because it tired his neck. Whether he could have
avoided the injury by more constant watching, and whether
he was neglectful in that regard were matters for the jury.
We think the nonsuit was properly denied within the rules
followed by this court in the following decisions: *Goldthorpe
v. Clark-Nickerson Lumber Co.*, 31 Wash. 467, 71 Pac. 1091;
*Bailey v. Cascade Timber Co.*, 32 Wash. 319, 73 Pac. 385,
and 35 Wash. 295, 77 Pac. 377.

A number of specified errors are assigned upon the instruc-
tions given by the court. Objection is made to the following
instruction:

"To maintain the defense of assumption of risk you must
find by a fair preponderance of the evidence that the dangers
of plaintiff's getting injured were open and apparent and

known to him; that is, that the danger of being injured in the manner and from the cause that he was injured was so open, obvious and apparent that a man of ordinary care and prudence, with the same knowledge and experience as plaintiff has, surrounded by similar conditions, could not have taken the chance or risk of such injury. In determining this question, as well as all the other acts of the plaintiff, you must decide it by the standard of what an ordinarily careful and prudent man of similar knowledge and experience, and under similar conditions and surroundings, would do."

It is conceded that the instruction was proper in so far as it stated the rule to be that the defense of assumption of risk is sustained when it is shown that the danger "was so open, obvious and apparent that a man of ordinary care and prudence . . . surrounded by similar conditions could not have taken the chance or risk of such injury." The following expressions in the instruction are, however, criticized: "with the same knowledge and experience as plaintiff has," and "similar knowledge and experience." The rule governing such instructions is stated as follows, in 1 Labatt, Master & Servant, § 391:

"The juridicial theory of imputed knowledge, which is applied in actions by a servant against his employer, is simply this: that he is or is not chargeable with a comprehension of the conditions which caused his injury and of the risks created by those conditions, according as it may reasonably be inferred that those conditions or those risks would or would not have been comprehended by a person of ordinary prudence, whose mental and physical capacities, both natural and acquired, and opportunities for observing the facts indicative of danger, were the same as those of the servant himself. Instructions are correct or erroneous according as they are consistent or inconsistent with this principle."

We think the criticized instruction was reasonably within the above-stated rule. It did not appear in the evidence that respondent was without a reasonable amount of experience, and the substance of the words of the instruction to which

the objection is directed is comprehended in the words of the above-named author. After specifying that the risk must be comprehended by a person of ordinary prudence, he adds, "whose mental and physical capacities, both natural and acquired, and opportunities for observing the facts indicative of danger, were the same as those of the servant himself." What is said above also applies to similar criticisms upon other instructions, and we think the jury could not have been confused in this regard to appellant's prejudice.

It is also argued that it was error to instruct as to the law governing vice principalship, for the reason that there was no such question in this case. From what has hereinbefore been said with relation to the motion for nonsuit, it will be seen that that question was in the case. It is insisted by appellant that one James, a fellow servant, adjusted the wedge, but the evidence conflicted upon that point, respondent's testimony being to the effect that it was both selected and adjusted by a vice principal. It is further contended, however, that the act itself was not one which the master was bound to perform, and that it was therefore the act of a fellow servant no matter who performed it. While it may have been such an act as could have been performed by a fellow servant, yet it does not follow that the master himself could not do it. When, therefore, one who occupied the place of master undertook to perform the act, it was the act of the master, and the latter's representative was not transformed into a fellow servant merely because he assumed to do a thing that might have been done by a fellow servant.

Complaint is made that the court instructed as to the rights of respondent if he acted in obedience to a command from one having authority to give it. The complaint is urged on the ground that there was no evidence of such command. We think the evidence to which we have hereinbefore referred justified the instruction, it being to the effect that respondent was assured by the master's representative of the safety of

the appliance, and was directed by a vice principal to do what he was doing at the time he was injured.

Objection is made to the following instruction:

"It is the duty of the master to furnish proper and suitable appliances and to see that the same are properly adjusted, and any one to whom the master delegates such duty becomes for such purposes the vice principal of the master for whose negligent act the master is responsible."

The above is the statement of a general proposition, and if it may be incomplete for lack of elaboration as applied to the particular facts appearing by the testimony in this case, such deficiency we think was fully supplied by the giving of the following further instructions at the request of appellant:

"The defendant is not liable in this case, in any event, unless you find that, after plaintiff had objected to using a certain wedge, the defendant's superior officer used the wedge and gave plaintiff assurance upon which he relied and had a right to rely, that the wedge used was sufficient for the purpose for which it was used. . . . If you believe from the testimony that the cause of the accident was the careless and negligent adjusting of the wedge, and that the wedge was so adjusted by James, plaintiff cannot recover in this action for James was his fellow servant. The master is not liable for injuries to one servant by the negligence of another in the same degree."

Under the instructions last quoted, the criticized one first set forth in this paragraph was amply qualified with reference to what appellant claims were the facts in the case. Considering the instructions as a whole, we think the jury could not have been misled as to the law of the case. Since we find no reversible error, the judgment is affirmed.

MOUNT, C. J., DUNBAR, CROW, and FULLERTON, JJ., concur.