THE ORIENT MINING COMPANY, a Corporation, Respondent, v. W. W. FRECKLETON, Appellant.

No. 1455.   (74 Pac. 652.)

1. Waters and Water Courses: Springs: Public Land: Appropriation: Rights of Appropriators: Findings.
   In an action to quiet plaintiff's title to a spring located on government land, evidence *held* to sustain a finding that plaintiff was a prior appropriator of the water of the spring, and entitled to the use thereof as against defendant.

2. Same: Estoppel.
   Where defendant stood by and saw plaintiff's employees preparing a spring on public land in order to appropriate the water without making any claim thereto, or that he had previously appropriated the waters, and was therefore entitled to use the spring, he was estopped to subsequently claim such rights.

3. Same: Damages: Proof.
   Where, in an action to quiet plaintiff's title to a spring, plaintiff proved that he had suffered loss by reason of defendant's acts in interrupting the flow of water, but failed to prove with reasonable certainty the amount of such loss, a finding assessing damages in plaintiff's favor was erroneous.

(Decided December 22, 1903.)

Appeal from the Fifth District Court, Juab County.— *Hon. W. C. Hall,* Judge.

Action to quiet plaintiff's alleged title to certain

water.   From a judgment in favor of the plaintiff, the defendant appealed.

.AFFIRMED IN PART: REVERSED IN PART.

*C. S. Patterson, Esq.,* and *Geo. W. Moyer, Esq.,* for appellant.

*Messrs. Powers, Straup & Lippman* and *F. J. Gustin, Esq.,* for respondent.

The evidence shows that he stood by and made no objection when the respondent first began its work upon the spring.   He went farther than that; and when the respondent suggested to him that he aid in developing the flow of water from the spring, that he could have such surplus water as defendant did not use, appellant, instead of making claim to the water, came over the next day and helped the respondent to dig its ditch.

One cannot stand by without asserting and making known a claim, if he has any, while another expends his money, his time and his labor in making improvements under an honest belief that he has the right to make those improvements.   Park v. Killham, 8 Cal.  77; Lehi Irrigation Co. v. Moyle, 4 Utah 327; Fabian v. Collins, 3 Mont. 229; Curtis v. Le Grande Hydraulic Water Co., 25 Pac. (Ore.) 378.

BASKIN, C. J.—This is an action to quiet the plaintiff's alleged title to a spring.

Among other allegations of the complaint it is alleged, in substance, that the plaintiff, in August, 1898, under an honest claim of right, appropriated the water of a certain spring situated on the land described in the complaint; that at that time water from the spring did not flow therefrom, upon the surface, but seeped away through the ground; that afterwards plaintiff, by excavations and other means, increased the flow of the spring, and that thereafter the plaintiff, at considerable

expense and labor, erected a tank, and conducted the water from the spring through an iron pipe into the tank; that from the time of said appropriation until the interference of the defendant, in the summer of 1900, the plaintiff, without interruption or hindrance from defendant or any other person, peacefully enjoyed the use of the water of the spring for its culinary and other beneficial purposes, and that all of the water of the spring was and is needed by the plaintiff for the purposes for which it was, and still is, used by plaintiff; "that the said defendant stood by, and, with full knowledge, and without any objection or claim of right to the waters of said spring, suffered and allowed plaintiff to increase the flow of the water of said spring, and to lay its said pipe line as aforesaid, and to erect its said tank, and to use and haul away the water so collected in said tank whenever the necessities of plaintiff demanded; that in the summer of 1900 said defendant wrongfully entered upon said land, and interfered with and greatly damaged plaintiff's said pipe line, and dug up and plowed the soil and earth, and rendered said pipe line valueless, and prevented plaintiff from taking any water from said spring, and threatened in the future to prevent plaintiff from using said water," without any right whatever, and claims an estate or interest in the waters of the spring adverse to the plaintiff.

The defendant, in his answer, denies the right to the water alleged by the plaintiff, and claims the same by virtue of a prior appropriation and use thereof by him. A decree awarding the waters of the spring to the plaintiff, and quieting its title thereto, was made and entered in the court below. The appellant took 11 exceptions to the findings, the substance of which is that the findings and decree are not supported by the evidence. It appears from the evidence that at the time the plaintiff made the improvements and began to use the waters of the spring, as alleged in the complaint, the land upon which the spring is situated, belonged to the United States. The following facts were found by the court,

viz.: "That on or about the 1st day of August, 1898, plaintiff entered upon the land [where the spring is situated], and thereupon proceeded to appropriate the waters of said spring, and to develop and improve the same; that plaintiff excavated said spring, and sunk a wooden pipe into the same, and attached thereto an iron pipe to conduct the water from said spring to a point where it could be used by plaintiff in its said business, and that plaintiff, in its work, developed and produced a flow of water from said spring, and thereafter, at considerable expense and labor, erected a tank, and connected the same by the said iron pipe with said spring for the purpose of collecting the waters therefrom, and plaintiff did thereafter collect in said tank the waters of said spring, and used the same in and about its business of mining, and that from time to time, until the commencement of this suit, plaintiff worked upon said spring, and improved the same, and without the interference of any person, until the year 1900; that from the 1st of August, 1898, until the summer of 1900, plaintiff used and enjoyed the waters of said spring without molestation or hindrance from defendant or any other person; that on or about the 1st day of August, 1898, when plaintiff first began working upon said spring, defendant stood by and observed plaintiff there at work, and made no objections, and did not claim any ownership or any right or title to said spring, or to the waters thereof, and made no objection to plaintiff collecting said water and hauling the same away for its use."

The acts of the plaintiff respecting the spring and the uninterrupted use of its waters by the plaintiff, found by the court, are clearly sustained by the evidence, but there is a conflict of evidence respecting the acts of the defendant. Willis Knapp, the superintendent of the plaintiff, testified, in chief, that while he, William Morris, Thomas Quinn, and other employees of the plaintiff, were, on or about the 1st of August, 1898, engaged at the work of improving the spring, the

defendant "came up, and we had quite a nice little stream of water running down from it, and the defendant said he wondered if he couldn't get water enough from there to run down to his land by opening it up and running a cut in. I said probably he could. I said, 'We are going to work a day or two at it, and, if you're a mind to come and help us, there will be that much done to it, and you are perfectly welcome to all the water that runs down to your place that we don't need;' and Mr. Freckleton came the next day and helped us to dig the ditch. When we cleaned out the spring and put in the wooden box, the flow increased. Mr. Freckleton made no claim to the water of the spring at that time. The land upon which it was situated was at that time not fenced. It was apparently vacant land." William Morris testified, in chief, that "Knapp said to Freckleton: 'If you have a mind to help us clean it out, we can increase the flow, and what surplus there is may do you some good.' He said: 'All right. I will come over to-morrow and help you.' He came over the next day, and helped us that day. He didn't say anything about owning the spring, or having taken water from it, and made no objection to the Orient Mining Company taking the water. I did not hear anything said about anybody having a prior right to the water of that spring." The defendant, in his own behalf, testified: "I was at the spring in controversy at the time they were making arrangements to get water from there. We talked at the same time about putting in a pipe, and when they got ready they came up to the spring, and they sent Mr. Quinn down to my house to tell me to come up; and, when I went up, Mr. Knapp said he didn't want to put it in so that it would interfere with my future developing of that spring, and he said, so long as I was getting the benefit, he thought it was about right that I should help clean out the spring. At the conversation I had with Mr. Knapp, at which Knapp said he didn't want to do any-

27  Utah. 9

thing that would interfere with any future development by him of the spring, Mr. Morris was working there, and Mr. Tom Quinn was also. Mr. Knapp never said to me on the day that I was working there at the spring, about the 1st of August, 1898, or any other time, that, if I would come up there to work, and help open the spring, that I might have what water they did not want.'' Willis Knapp, in rebuttal, testified: ''I did not send Tom Quinn or any one else down after Freckleton, nor make any request to Freckleton to come up there. I did not have any conversation with him in which I said I did not want to do anything that would interfere with his future developments of the spring, and that, as long as he was getting the benefit, I thought it was about right that he should help clean out the spring. I do not know how he happened to come up there.'' Thomas Quinn, in rebuttal, testified: ''Mr. Knapp did not send me down to Mr. Freckleton's the last of July or the first of August, 1898. I did not go down to get Mr. Freckleton. I was there at the time. I was there when Freckleton came up where we were at work. I did not hear the conversation (testified to by defendant). I did not hear Knapp say to Freckleton that he didn't want to do anything that would interfere with Freckleton's future development, and thought it about right that Freckleton should help clean out the spring, as he would get the advantage of it.'' William Morris, on rebuttal, testified that he was present during the conversation between Freckleton and Knapp, and did not hear Knapp make the remarks testified to by Freckleton.

We are clearly of the opinion that the findings hereinbefore set out are sustained by a decided preponderance of the evidence, and support the decree awarding the spring to the plaintiff. Good faith in the premises required the defendant, at the time he was present and saw the employees of the plaintiff engaged in making the aforesaid improvements, to assert

his claim to the spring, if he had any. This, as shown by the preponderance of the evidence, he failed to do, and afterwards voluntarily assisted the employees of the plaintiff in making the improvements, in consideration of the promise that he might use the surplus waters. It is elementary that he who fails to assert his alleged rights, when in good faith he should have done so, is estopped from afterwards asserting the same.

The plaintiff was awarded by the decree $250 damages. The appellant contends that that award, and the findings upon which it is based, are not sustained by the evidence. "A party who claims compensation for an injury done him must show, as part of his case, not only that he has suffered loss on account of the injury, but also what is the amount of the loss; and the burden of proving both these things is upon him." Sedgwick, Damages, sec. 170. While the evidence in this case shows with sufficient certainty that the plaintiff has suffered loss from the wrongful acts of the defendant, it fails "to show with that reasonable certainty required by law" that the loss sustained was $250, or any other definite amount.

It is ordered that that portion of the decree quieting plaintiff's title to the spring be affirmed, and that portion relating to the award of damages be set aside, and the case be remanded for further evidence on the question of damages, and that the parties pay their own costs of this appeal.

BARTCH and McCARTY, JJ., concur.