# SHAW, APPELLANT, *v.* NEW YEAR GOLD MINES COMPANY, RESPONDENT.

### (No. 1,923.)

### (Submitted June 15, 1904.   Decided July 9,. 1904.)

*Master and Servant—Explosion in Mine—Injury to Servant—*
*Negligence—Proximate Cause—Burden of Proof—Duty to*
*Adopt Rules—Nonsuit—Appeal—Evidence—Review.*

1.   In an ordinary case of negligence, the burden of proof is upon plaintiff to show by competent evidence the negligence of defendant as alleged, and also that such negligence was the proximate cause of plaintiff's injury.

2.   To justify reversal on appeal from a nonsuit in an action for personal injuries, the evidence must not leave either the negligence of defendant, or that it was the proximate cause of the injury, to conjecture; and, if it is equally consonant with some theory inconsistent with either of these facts, it does not tend to prove them, within the rule that whatever the evidence tends to prove will on such an appeal be taken as established.

3    In an action against a mine owner for injuries to a miner caused by an explosion, evidence *held* not to justify submission of the issue of defendant's negligence.

4.   While a master is bound to use reasonable diligence to provide and maintain a safe place to work, such rule does not apply to a case where servants are creating the place of·work, when it is constantly being changed in character by their labor, when it only becomes dangerous by the carelessness or negligence of the workmen, when the dangers which arise are very short-lived, or when by the negligence of the workmen the place is rendered unsafe without the master's fault or knowledge.

5.   Mere failure of a master to adopt rules to prevent injury to a·servant is not proof of negligence, unless it appears that the master, in the exercise of reasonable care, should have foreseen the necessity for such precaution.

*Appeal from District Court, Cascade County; J. B. Leslie,*
*Judge.*

ACTION by E. A. Shaw, as administrator of the estate of Joseph L. Adams, deceased, against the New Year Gold Mines Company.   From a judgment for defendant, plaintiff appeals. Affirmed.

*Mr. A. C. Gormley,* and *Mr. Richard Bennett,* for Appellant.

The motion for nonsuit should have been overruled because, first, no sufficient grounds were set forth in said motion; and,

second, the case was one for the jury, no matter what grounds might have been stated in said motion. (*Jacobs Sultan Co.* v. *Union Merc. Co.*, 17 Mont. 61; *Palmer* v. *Marysville Dem. Pub. Co.*, 90 Cal. 168, 27 Pac. 21; *Frank* v. *Mining Co.*, 56 Pac. 419; *McIntyre* v. *Ajax Min. Co.*, 60 Pac. 552; *Lewis* v. *Min. Co.*, 61 Pac. 860; *Boyle* v. *Union Pac. R. R. Co.*, 71 Pac. 988; *Kelley* v. *Cable Co.*, 7 Mont. 70, 8 Mont. 440, 13 Mont. 411, 16 Mont. 484; Civil Code, Secs. 2660, 2661, 2662.)

Lacourcier, Roberts' partner, died before the trial, but there is nothing to show that he was negligent in any way, under any phase of the case. And, in any event, his negligence would not excuse the defendant if it was also negligent. (*Freeman* v. *Sand Coulee Coal Co.*, 25 Mont. 194.)

In the case at bar it seems to be defendant's position that the two men going off shift were to notify the on-coming shift of any missed holes. What difference can it make whether this duty was to be performed by all the outgoing shift or one particular member of it? The point is that this duty belongs to the master, and whoever represents him in this duty, even though otherwise a fellow-servant with the man coming on shift, is in this particular a vice-principal, for whose neglect the master is liable. (*Shannon* v. *Con. Tiger & Poorman Min. Co.*, 64 Pac. 169; *McDonough* v. *Great Northern Ry. Co.*, (Wash.) 46 Pac. 334; *Wheeler* v. *Wason Mfg. Co.*, 135 Mass. 297; *Wellston Coal Co.* v. *Smith*, 65 Ohio St. 70, 55 L. R. A. 99; 1 Thompson on Neg., Secs. 532-3; *Railroad Co.* v. *Herbert*, 116 U. S. 642.)

In the case cited below there was evidence that the foreman did not take much notice of any of the wagons; that it was not customary for teamsters to speak to him about repairing wagons, but that they would themselves look after their own wagons, and, if they saw one in bad order, they would take it to the shop. "But it does not appear—certainly not by undisputed evidence—that the plaintiff had any knowledge of such custom. Besides, the law is well settled that it is the duty of the master to provide suitable and safe machinery and appliances for the

use of his employes and keep the same in repair, and that the master cannot shift such duties onto his subordinates." (*Boelter* v. *Ross Lumber Co.,* (Wis.) 79 N. W. 243.)

Defendant was held not entitled to nonsuit where servants were acting without any regulations, and simply followed a dangerous practice sanctioned by time and custom. (*Doing* v. *N. Y. Co.,* (N. Y.) 45 N. E. 1028; *Bushby* v. *N. Y. Co.,* (N. Y.) 14 N. E. 407.)

Where the duty is the master's, liability for proper performance is not shifted by the adoption of rules or regulations providing for performance of act or duty by an agent of the master. (*Hankins* v. *N. Y. Co.,* (N. Y.) 142 N. Y. 416, 25 L. R. A. 396; *Mo. Pac. Ry. Co.* v. *McElyea,* (Tex.) 1 L. R. A. 411; *Crisswell* v. *Pittsburgh, etc. Co.,* 6 S. E. 31; *Bookrum* v. *Ry. Co.,* (Tex.) 57 S. W. 919.)

It is the duty of persons or corporations having many men in their employ, and carrying on a dangerous and complicated business, to make rules which, if observed, will afford reasonable protection to the employes against the dangers incident to the performance of their respective duties. Failure to do so is negligence, and for injuries to an employe resulting from such failure of duty the master is liable. (20 Ency. of Law, 2d Ed., 101-2, 159-161.)

The master is bound to exercise such supervision as will make it reasonably certain that the business is being carried on pursuant to the rules as framed. (*McElligott* v. *Randolph,* 22 Atl. 1094; *Gerrish* v. *New Haven Ice Co.,* 27 Atl. 235; *The Pioneer,* 78 Fed. 600.)

While it is true that the employe assumes the ordinary risks incident to his employment, the risks thus assumed by him are those only which occur after the due performance by the master of those duties which the law imposes upon him. (*Himrod Coal Co.* v. *Clark,* (Ind.) 64 N. E. 282; *City of Emporia* v. *Kowalski,* (Kan.) 71 Pac. 232; *Pantzar* v. *Tilly Foster Co.,* 99 N. Y. 368, 2 N. E. 24; *Schroeder* v. *C. & A. R. Co.,* 108 Mo. 322; *Pullman Palace Car Co.* v. *Laack,* (Ill.) 18 L. R. A. 219.)

It has been held that a company cannot escape liability for its own negligence by printing and publishing rules in and about the mine. Such rules are nothing but attempts to make laws, and so far as they are claimed to operate as a contract against the negligence and dereliction of the mining company they are void, as against public policy. The general principle is that a master cannot, by contract with a servant, in consideration of the employment, exempt himself from liability to the servant for injuries sustained through his negligence, such contract being void as against public policy. (*Himrod Coal Co.* v. *Clark,* (Ind.) 64 N. E. 282; *Holmes* v. *So. Pac. Co.,* (Cal.) 52 Pac. 654.)

The negligence of the master in keeping the place safe is not a hazard necessarily attendant upon the occupation of the servant, nor is it one which he, in legal contemplation, is presumed to risk in the service of the master. Where the nature of the business is such as to require it, the law also imposes upon the master the duty of making and promulgating suitable rules for the protection of the employes. (*Pool* v. *S. P. R. R. Co.,* (Utah) 58 Pac. 328; *Faulkner* v. *Mammoth Min. Co.,* (Utah) 66 Pac. 799.)

While a servant assumes the risks ordinarily incident to his employment, and all open and visible risks, including the negligence of a fellow-servant, yet he has a right to presume that the master will exercise due care for his safety by providing, when necessary, all such needful rules for the conduct of its business, or such precautionary measures, as will not needlessly expose him to risks not necessarily resulting from his employment. (*Will* v. *Oregon S. L. & U. N. Ry. Co.,* (Ore.) 27 Pac. 954.)

If an occupation attended with danger can be prosecuted by proper precautions without fatal results, such precautions must be taken by the promoters of the pursuit or employers of laborers thereon. Liability for injuries following a disregard of such precautions will otherwise be incurred, and this fact should not be lost sight of. So, too, if persons engaged in dangerous occu-

pations are not informed of the accompanying dangers by the promoters thereof, or by the employers of laborers thereon, and such laborers remain in ignorance of the dangers and suffer in consequence, the employers will also be chargeable for the injuries sustained. (*Mather* v. *Rillston,* 156 U. S. 391, 15 S. C. R. 464, 39 L. Ed. 464.)

The employer cannot escape liability by leaving to the employes the regulation of matters which he ought to have provided for. (*Tedford* v. *Los Angeles Electric Co.,* (Cal.) 54 L. R. A. note 86-8.)

"Where the servant acts under the immediate direction of the master's foreman, that fact is equivalent to an assurance that the servant may safely proceed; and he is not bound in such case to search for danger, but may rely on the conduct and judgment of the foreman." (*Faulkner* v. *Mammoth Min. Co.,* (Utah) 66 Pac. 800; *Herdler* v. *Range Co.,* 136 Mo. 3, 37 S. W. 115; *Sullivan* v. *Railroad Co.,* 107 Mo. 78, 17 S. W. 748; *Louisville, etc. Ry. Co.* v. *Hanning,* (Ind.) 31 N. E. 187; *Goldthorpe* v. *Clark-Nickerson Co.,* (Wash.) 71 Pac. 1093; Thompson; Neg. p. 851; Civil Code, Sec. 2660.)

It was for the jury to consider all the various elements that go to make up ordinary care, and then say whether "the defendant knew, or by the use of reasonable diligence might have known, of the existence of the danger from this unexploded blast," and, if so, whether it informed Adams of such danger. (*Cain* v. *Gold Mt. Mining Co.,* 27 Mont. 529.)

*Mr. Ransom Cooper,* for Respondent.

MR. COMMISSIONER CLAYBERG prepared the following opinion for the court:

Appeal from a judgment of nonsuit. Joseph Adams, who was plaintiff's intestate, brought suit against the New Year Gold Mines Company to recover damages for personal injury caused by the alleged negligence of defendant.

The material allegations of the complaint as to this negligence are as follows:

"(4) That the plaintiff, at the time of the accident, hereinafter set forth, and for some time prior thereto, was actually engaged and employed by the defendant as a miner in said Old Bach mine; that the plaintiff was employed as such miner in drilling, blasting and driving a tunnel in said mine.

"(5) That it was the duty of the defendant to provide and maintain a reasonably safe place for the plaintiff to work in, and to keep and maintain said tunnel in which plaintiff was working in a safe condition, so as not to expose the plaintiff to any unnecessary or extraordinary hazard or peril.

"(6) That the defendant failed and neglected to perform and discharge its said duty to the plaintiff, and knowingly and negligently permitted the place in which plaintiff was working to become unsafe, thereby exposing the plaintiff to extraordinary hazard and peril, as is more particularly set out in the next paragraph herein.

"(7) That on the morning of the 25th of September, 1900, while the two men employed on the day shift in said tunnel were at work therein, and immediately after the two miners aforesaid had loaded a hole with blasting powder in the bottom of the tunnel, as it was their custom and duty to do at said time, the foreman of the defendant came to the place where said men were working, and ordered and directed them not to fire the hole loaded by them with blasting powder as aforesaid; that said men obeyed the instructions of said foreman, and left the said blast as it was, and the same remained unexploded until the accident to the plaintiff as herein stated; that said men on the day shift quit work at 6 o'clock on said day, and that the plaintiff and his partner on the night shift went to work, as was their duty, at 7:30 p. m. on said day, in the same place where said day shift had been working; that the plaintiff, shortly after commencing work as aforesaid, started in to clean up the bottom of said tunnel which had been left by the day shift, and which it was the

duty of the plaintiff to do, and plaintiff accordingly began to drill holes in the bottom of said tunnel a few feet from the face of the drift, for the purpose of loading them with blasting powder and cleaning up said bottom, and while the plaintiff was so drilling in said place the charge of blasting powder loaded by the day shift in the morning as aforesaid exploded, which explosion caused plaintiff to receive severe and grievous injuries, his left eye being blinded and the sight in the other eye being seriously affected, his jaw being fractured, most of his teeth being knocked out, his side and chest being severely bruised and injured, his left hand being almost blown off, so that it was necessary to have the same amputated, his right hand being rendered crippled and useless, and suffering also a compound fracture of the left arm between the elbow and the wrist, said injuries causing him great and excruciating pain and suffering, and confining him to the house and hospital for several months; that when plaintiff went to work on the evening of September 25th as aforesaid, and up to the time when said accident occurred, plaintiff did not know and had no means of knowing that there was at said place, or anywhere in said tunnel, any charge or charges of blasting powder not shot off, and could not have discovered the fact except by being informed thereof; that the defendant and its said foreman knew, or by the use of reasonable diligence might have known, of the existence of said unexploded blast, and of the danger to the plaintiff therefrom, and it was the bounden duty of the defendant and its said foreman to convey such information to plaintiff, but that the defendant and its said foreman failed and neglected so to do, and willfully, knowingly and negligently allowed and directed the plaintiff to go to work in said place, where his duty called him, in ignorance of said danger; that said explosion occurred and plaintiff was injured as aforesaid without any fault or negligence on his part, but solely because of the defendant's negligence as aforesaid; that the said foreman was the vice-principal of the defendant in all matters relating to the working and operating of said Old Bach mine, and with reference to the employment of

the plaintiff and the other miners mentioned herein, and that the negligence of said foreman as aforesaid was the negligence of the defendant."

"(9) That by reason of the said neglect and omission of the defendant to keep and maintain a safe place wherein plaintiff was required to work as aforesaid as defendant's employe, and by reason of the injuries suffered by plaintiff solely because of said negligence and want of ordinary care on the part of the defendant, as hereinbefore set forth, the plaintiff has been damaged by the defendant in the sum of thirty thousand dollars."

The answer of defendant denies that the injuries to plaintiff were caused by the negligence of defendant. Sets up contributory negligence on the part of plaintiff. Alleges that he had been employed at the mine for some time, knew the conditions, and knew that in running the tunnel it was necessary for the employes to drill holes, put blasts in the rock in the breast of the tunnel, and explode them; that he had been engaged for a long time in the performance of that kind of work, and well knew that sometimes such blasts would miss fire and fail to go off, and that it was sometimes difficult for the man who put in blasts to ascertain whether all the balsts fired went off; that the danger from unexploded blasts was incident to this class of employment; that those engaged in the work of running the tunnel assumed the risk; that he voluntarily continued his services, with full knowledge of the risk, without objection; and that, if plaintiff was injured by the negligence of any one, it was the negligence of fellow servants, for which defendant was not responsible.

At the close of plaintiff's testimony, defendant moved for a nonsuit, which was granted, and judgment entered in favor of defendant. From this judgment plaintiff appeals.

1. Counsel for appellant insists that, by the decisions of this court upon appeals from judgments of nonsuit, it is well settled that whatever the evidence tends to prove will be considered as proven, and that a judgment upon a nonsuit will not be sus-

tained unless the conclusion from the facts necessarily follows, as a matter of law, that no recovery could be had in any view which could be reasonably taken from the facts which the evidence tends to prove. (*Cain* v. *Gold Mountain M. Co.,* 27 Mont. 529, 71 Pac. 1004; *Coleman* v. *Perry,* 28 Mont. 1, 72 Pac. 42; *Ball* v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871; *Michener* v. *Fransham,* 29 Mont. 240, 74 Pac. 448; *Nord* v. *Boston & Montana Consol. C. & S. Mining Co.,* 30 Mont. 48, 75 Pac. 681; *McCabe* v. *Montana Central Ry. Co.,* 30 Mont. 323, 76 Pac. 601; *Cummings* v. *Helena & Livingston S. & R. Co.,* 26 Mont. 434, 68 Pac. 852.)

Under this rule, however, the record must contain competent testimony fairly tending to affirmatively prove the allegations of the complaint. The burden of proof is upon plaintiff, and is not satisfied if the conclusion to be reached from the testimony offered is merely a matter of conjecture. If such conclusion be equally consonant with the truth of the allegations, and with some other theory or theories inconsistent therewith, it becomes a mere conjecture, and the rule of the burden of proof is not satisfied. Thus, in an ordinary case of negligence, like the one under consideration, plaintiff has the burden of proving the negligence of defendant as alleged, and also that such negligence was the proximate cause of plaintiff's injury. If the testimony leaves either the existence of negligence of defendant, or that such negligence was the proximate cause of the injury, to conjecture, it is insufficient to establish plaintiff's case. If the conclusion to be reached from the testimony is equally consonant with some theory inconsistent with either of the issues to be proven, it does not tend to prove them, within the meaning of the rule above announced. The use of the word "tend" does not contemplate conjecture. It contemplates that the testimony has a tendency to prove the allegations of the complaint, and not some other theory inconsistent therewith. (*Patton* v. *Texas & Pac. Ry. Co.,* 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; *Deschenes* v. *Concord & M. Railroad,* 69 N. H. 285, 46 Atl. 467; *Searles* v. *Manhattan Ry. Co.,* 101 N. Y. 661, 5 N. E. 66;

*Dobbins* v. *Brown,* 119 N. Y. 188, 23 N. E. 537; *Atchison, T. & S. F. R. Co.* v. *Alsdurf,* 68 Ill. App. 149; *Breen* v. *St. Louis Cooperage Co.,* 50 Mo. App. 202; *Meehan* v. *Speirs Mfg. Co.,* 172 Mass. 375, 52 N. E. 518; 2 Labatt on Master and Servant, Secs. 283, 287, and notes.)

Justice Brewer uses the following language in *Patton* v. *Texas & Pac. Ry. Co.,* 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361: "And where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between these half a dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employe is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."

The record discloses no direct evidence concerning the occurrence of the accident. Adams, the injured man, died before the trial of the case, and his administrator was substituted. The evidence concerning the actual facts occurring at the time of the accident is therefore entirely circumstantial, and the direct and proximate cause thereof is entirely a matter of inference, to be deduced from the circumstances and other facts detailed by the witnesses. We do not desire to be understood that a plaintiff may not make out a case of actionable negligence against a defendant by circumstantial evidence, but such circumstantial evidence must tend directly to establish the cause of action, and not some theory inconsistent therewith.

In this case the accident is claimed to have occurred from an unexploded charge. This is possible. It is equally possible that it occurred from an unexploded piece of dynamite which had become dislodged from a loaded hole by other blasts, and inter-

mingled with the waste which it was Adams' duty to clean up, or from the negligence of Adams himself. Many other theories of the accident present themselves, which are equally deducible from the facts disclosed by the record. Under the above authorities, this is insufficient to satisfy the rule that the burden of proof is upon plaintiff to show by competent proof that the defendant was negligent, and that the injury occurred as the proximate result of such negligence.

2.    While it is a general rule that a master is bound to use reasonable diligence to provide a servant with a safe place in which to work, and to maintain such condition during the term of employment, such rule should have no application to a case when the plaintiff and his fellow servants are creating the place of work; when it is constantly being changed in character by the labor of the men working upon it; when it only becomes dangerous by the carelessness or negligence of the workmen, or by the negligent manner in which they use the tools or materials furnished for their work; when the dangers which arise are very short-lived; or when, by the negligence of the workmen, the place is rendered unsafe without the master's fault or knowledge.

The Supreme Court of Utah, in the case of *Anderson* v. *Daly M. Co.,* 16 Utah, 28, 50 Pac. 815, uses the following language: "While the employer is bound to furnish a safe place for the servant to work in, he is not bound to make it an absolutely safe place; but in a place where the nature of the business is such that the conditions are continually changing by reason of the putting in and setting off of blasts, and of continuing excavations in a shaft, and thereby temporarily dangerous conditions arise, the employer cannot be held responsible therefor. * * * The employer was bound to furnish a reasonably safe place and appliances with which to do the work. But where the nature of the business is extremely dangerous, and conditions are necessarily continually changing by reason of placing and setting off blasts, whereby dangerous conditions arise continually through the acts of the servant, without the knowledge of the master, the

employer cannot be held responsible therefor without his fault."

In *Davis* v. *Trade Dollar Cons. M. Co.*, 117 Fed. 122, 54 C. C. A. 636, the court says: "It is true that the law of master and servant requires that the former furnish the latter a safe place in which to work, but the master is not required to furnish the servant a safe place in which to work where the danger is temporary, and when it arises from the hazard and the progress of the work itself, and is known to the servant. The master is not required to be present at the working place at all times in person or by a representative, to protect a laborer from the negligence of his fellow workmen or from his own negligence in the constantly changing conditions of the work."

In *Browne* v. *King*, 100 Fed. 561, 40 C. C. A. 545, the court says: "The danger was temporary. It was danger incident to the very work plaintiff was employed to perform. Until in the progress of the work the missed shot failed to explode, there was no danger." See, also, *Mancuso* v. *Cataract, etc. Co.*, (Sup.) 34 N. Y. Supp. 273; *Hussey* v. *Coger*, 112 N. Y. 614, 20 N. E. 556, 3 L. R. A. 559, 8 Am. St. Rep. 787; *Mechan* v. *Speirs Mfg. Co.*, 172 Mass. 375, 52 N. E. 518; *Finlayson* v. *Utica M. & M. Co.*, 67 Fed. 507, 14 C. C. A. 492; *City of Minneapolis* v. *Lundin*, 58 Fed. 525, 7 C. C. A. 344; *Wiskie* v. *Montello Granite Co.*, 111 Wis. 443, 87 N. W. 461, 87 Am. St. Rep. 885; Labatt on Master and Servant, Secs. 269, 588, 612.

The cases of *Shannon* v. *Cons. T. & P. Mining Co.*, 24 Wash. 119, 64 Pac. 169, and *McMillan* v. *North Star M. Co.*, 32 Wash. 579, 73 Pac. 685, 98 Am. St. Rep. 908, are seemingly to the contrary, but clearly distinguishable from the case at bar, as to the facts involved. But however this may be, we are of the opinion that the rule adopted by this opinion is based upon the better reasons, and is better adapted to the conditions of this state, where the mining industry is of such vast importance. Any other doctrine would place the master in the position of an insurer.

3. We are of the opinion that no negligence of defendant was shown, and that no proof was offered which even tended to

show such negligence. Negligence is a breach of duty. The duty of defendant was to exercise due diligence in furnishing and maintaining a reasonably safe place in which Adams was to work. There is no evidence in the record tending to show that the tunnel was an unsafe place of itself, and it is only claimed that it became unsafe by reason of a blast left by the workmen on the preceding shift unexploded and undischarged. The negligence of defendant is claimed to exist in this case upon two theories: First, that the miners who worked in the tunnel at the point where Adams worked and was injured, during the preceding shift, prepared and loaded two holes, but did not fire them because directed not to do so by Winston, the foreman, and that such holes were left unexploded until the time of the accident, and that Adams was not notified of these facts; and, second, that an unexploded hole was left at the breast of the tunnel, and that Adams was not notified of the existence of such hole.

As to the first theory. The proof presented in the record discloses the following state of facts: Roberts and Lacourcier were working in the tunnel—Lacourcier at the breast thereof, and Roberts stoping ore about ten feet back of the breast, above the roof of the tunnel; that Lacourcier had drilled and loaded ready for blasting two holes near the bottom of the tunnel, at its breast; that Roberts had stoped down ore which lay in the bottom of the tunnel adjacent to the place where the loaded holes were situated. Winston, the foreman, came into the tunnel. A conversation ensued between Roberts and Winston, whereby the attention of Winston was called to the fact that, if the holes were shot at that time, the waste arising from the shots would get mixed with the ore which Roberts had stoped down, and that Winston said that the carman (whose duty it was to remove the ore after it had been stoped down) was in the other tunnel, and would not be up there until after dinner. Winston then directed Lacourcier not to fire the holes. It is evident from these circumstances that the only reason Winston told Lacourcier not to fire the holes was because the waste from the blasts would become mixed with the ore that had been stoped by Roberts and

lay on the floor of the tunnel. It will be noticed that no instructions were given to Lacourcier not to fire the holes after the ore had been removed. Lacourcier did not fire the holes at that time, but proceeded with his work of drilling other holes, but before the close of the shift at 6 o'clock in the evening Lacourcier fired three holes and Roberts fired three holes. The ore which lay in the bottom of the tunnel when Winston directed Lacourcier not to fire the shots must have been removed, as the only object of such directions was to prevent the waste becoming mixed with the ore. The result would have been the same by firing any of the blasts in the face of the tunnel. It is very evident that it was only intended by Winston, and understood by Lacourcier and Roberts, that the holes were not to be fired until the ore was removed. Roberts testifies that they fired six shots—three holes that had been drilled and loaded by Roberts, and three which had been drilled and loaded by Lacourcier; that after lighting the fuses they retired some distance, and listened for the reports of the shots, and counted six of them. Roberts says he could distinguish the holes fired by himself from the holes fired by Lacourcier because the ground was softer, and he had put in larger charges. Lacourcier and Roberts then left the mine, believing that all the holes which had been loaded in the tunnel during the shift had been fired by them. The evidence discloses that Winston was not in the tunnel during the afternoon, and had no knowledge as to whether the holes which he had directed in the forenoon should not be fired, had been afterwards fired by Lacourcier. There is no evidence tending to show that defendant or any of its officers or superintendent knew of the instructions of Winston, or had any knowledge as to whether the shots were left unfired before the close of the shift. There was, therefore, no negligence proven against either Winston or defendant.

As to the second theory. It is very doubtful whether, under the complaint, the plaintiff can claim that any negligence is alleged except that comprehended in the first theory, above discussed; but, inasmuch as the second theory of plaintiff is as equally unsupported by the evidence as the first, we will not pass

upon the sufficiency of the allegations of the complaint in that
regard.    The second theory is based upon the proposition that
there was an unexploded hole near the breast of the tunnel which
the defendant knew about, or by the exercise of reasonable dili-
gence could have known about, and did not inform Adams of its
existence.    We cannot conceive how the defendant could have
known of an unexploded hole.    Neither do we believe that it
was defendant's duty, before allowing the next shift to go to
work, to investigate the conditions, and ascertain whether all
the holes fired by Roberts and Lacourcieir had exploded.    Rob-
erts and Lacourcier went off shift at 6 o'clock, immediately after
firing the holes.    The testimony discloses that it would be un-
safe for any one to go into the tunnel for some time after the
explosions on account of the bad air generated by the explosions,
and the danger of further explosions from parts of the charges
which might not have been fully exploded.    Adams went on
shift at 7:30 in the evening.    It was his duty to clean up the
refuse in the tunnel caused by the explosions of shots fired by
Lacourcier and Roberts.    It was the usual custom, just before
the close of every shift, for the miners who worked in the tunnel
to fire their shots, and it was the duty of the incoming shift to
clean up the refuse thrown out by such shots before going to
work in the advancement of the tunnel.    Adams knew that shots
had been fired.    The testimony also discloses that all the miners
knew that sometimes there might be a missed hole, which was
extremely dangerous.    No one knew or thought any hole had
missed fire or was unexploded.    Why any one should tell Adams
that there was an unexploded or missed hole in the breast of
the tunnel when nobody believed it existed is beyond compre-
hension.    Testimony was given to show that it was the custom
in that mine for the miners, when they went off shift, if there
was a missed hole, to notify the shift succeeding them; but this
was only in cases where the offgoing shift thought there might
be a missed or undischarged hole.    If the duty existed at all to
inform Adams of the conditions of the mine as left by the pre-
ceding shift, it was a duty devolving upon his fellow servants,

which Adams knew and well understood; and, if this duty was not complied with, it was the negligence of a fellow servant, and not of the defendant.

4.    Plaintiff, in his brief and argument, presents a still further proposition to the court, and that is that it became the duty of the defendant to make reasonable rules and regulations for the protection of the miners, whereby they might be notified of hidden dangers from unexploded or missed shots in the breast of the tunnel.

The Supreme Court of Oregon had this question under consideration in the case of *Johnson* v. *Portland Stone Co.*, 40 Oregon, 436, 67 Pac. 1013, and use the following language: "It is also claimed that the defendant was negligent in not promulgating rules by the observance of which the accident could have been avoided.    There was nothing in the nature of the business in which the plaintiff was engaged at the time of the injury which made it necessary for the defendant to make and publish rules.    The mere failure to adopt rules is not proof of negligence unless it appears that the master, in the exercise of reasonable care, should have foreseen and anticipated the necessity for such precaution.    It is not suggested in this case what particular rules could have been adopted that would have been likely to prevent the accident."    We agree with the doctrine thus announced.    It was not shown what particular rules could have been adopted that would have been likely to prevent the accident.    (See, also, *Davis* v. *Trade Dollar Cons. M. Co., supra.*)

But, again, it is clearly apparent that the method of driving the tunnel was only a detail of the work in which Adams was engaged, and it is well established that the master is never liable for any negligence in carrying out the details of the work if the place in which the work is conducted is in itself safe, and the dangerous condition is brought about only by the negligence of the men working there. (*Mancuso* v. *Cataract Cons. Co.,* (Sup.) 34 N. Y. Supp. 273; *Davis* v. *Trade Dollar Cons. M. Co.,* 117 Fed. 122, 54 C. C. A. 636; *Johnson* v. *Portland Stone Co.,* 40

Oregon, 436, 67 Pac. 1013; *Cullen* v. *Norton,* 126 N. Y. 1; 26 N. E. 905.)

We have not considered the questions as to whether plaintiff assumed the risk of danger from unexploded blasts, or as to whether Winston was a fellow servant or a vice principal, as neither is necessary to this decision.

The unfortunate accident disclosed by the record arouses the sympathy of all, but, "in view of all the circumstances, as they appear by the evidence, the calamity seems to have been a casualty from a cause unforeseen, and not within reasonable apprehension" (*Mancuso* v. *Cataract Cons. Co., supra*), and "no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs." (*Patton* v. *Tex. Pac. Ry. Co., supra*).

We therefore advise that the judgment appealed from be affirmed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment is affirmed.

MR. JUSTICE MILBURN, not having heard the argument, takes no part in this decision.

Rehearing denied September 28, 1904.