CARMAN, RESPONDENT, v. MONTANA CENTRAL RAIL-
WAY COMPANY, APPELLANT.

(No. 2,050.)

(Submitted December 19, 1904.    Decided March 1, 1905.)

*Railroads—Stock Killing—Negligence—Damages—Sufficiency
of Evidence—Hypothetical Questions—Taking Papers to
Jury-room—Review of Evidence.*

Verdict—Evidence—Appeal—Judgment.
   1.   Whether a verdict is supported by any substantial evidence, being
   a question of law, may be determined on appeal from the judgment.
Railroads—Killing Stock—Evidence—Negligence.
   2.   In an action against a .railroad company for killing cattle, the
   engineer testified that a curve in the track prevented his seeing the
   cattle until he was about two hundred feet from them; that the
   train was running between forty-one and forty-two miles per hour,
   and was equipped with air-brakes, which were in first-class condition;
   that on seeing the cattle he made "an emergency application of the
   brakes" and gave the stock alarm; that he did all he could to pre-
   vent striking the cattle; that he stopped the train within six hundred
   feet; and that to stop within one thousand feet would be a good stop.
   *Held*, that this testimony being uncontradicted, and there being no evi-
   dence of negligence, a verdict for defendant should have been directed.
Railroads—Killing Stock—Value—Evidence—Indefiniteness—Judgment.
   3.   Where three of plaintiff's animals were killed and three were in-
   jured, testimony merely as to the value of the animals killed and
   injured, and failing to show clearly the damages sustained by reason
   of the injury to those not killed, is too indefinite on which to base a
   judgment.
Jury—Maps—Papers—Taking to Jury-room.
   4.   Under Code of Civil Procedure, section 1083, providing that on
   retiring for deliberation the jury may take with them all papers
   which have been received in evidence, it was not error, in an action
   against a railroad company for killing cattle on the track, to refuse
   to allow the jury to take with them a map of the place where the
   accident occurred, which was not admitted in evidence, but only used
   by the witnesses while testifying in explaining their testimony.
Expert Witnesses—Hypothetical Questions—Basis.
   5.   In asking a hypothetical question of an expert witness, the facts
   proven must be taken as the basis for the hypothesis.

*Appeal from District Court, Cascade County; J. B. Leslie,
Judge.*

ACTION by S. H. Carman against the Montana Central Rail-
way Company.   From a judgment for plaintiff, defendant ap-
peals.   Reversed.

*Mr. E. L. Bishop,* for Appellant.

*Messrs. Greene & Cockrill,* for Respondent.

MR. COMMISSIONER CLAYBERG prepared the opinion for the court.

Appeal from a judgment. The action was to recover for the alleged negligent killing of some of plaintiff's cattle, and the negligent injury to others. The complaint alleges two separate causes of action: First, on account of negligence in failing to erect and maintain proper fences along its right of way; and, second, on account of negligence in the operation of its trains. An answer and reply were duly filed. The case was then tried before a jury. At the close of the testimony, upon motion of defendant's counsel the court withdrew the first cause of action from the consideration of the jury. A verdict for $175 was rendered in favor of plaintiff on the second cause of action, and judgment followed. At the close of the evidence, counsel for defendant moved the court to direct a verdict for defendant on the grounds of failure of the evidence to show the negligence alleged and the damages claimed.

The negligence alleged in the second cause of action was that "the said cattle could be seen by the servants of said defendant in charge of said train for a distance of more than three hundred yards—a sufficient distance to have stopped said train, and prevent the same from colliding with or running against or over or upon any of the stock"—but that said defendant's servants in charge of the train neglected to stop it, and allowed it to "run into, against, over, and upon" said cattle, killing three and injuring three of them, to plaintiff's damage in the sum of $240. The sufficiency of the complaint is not questioned.

This appeal being from the judgment alone, counsel for respondent insists that, under the practice in this state, this court cannot consider the sufficiency of the evidence; that there was testimony introduced by plaintiff tending to sustain the verdict; and that the testimony introduced by defendant tended

to contradict this, and therefore there was a conflict of evidence. Counsel for appellant insist that there is no conflict in the evidence, and that the record contains no substantial evidence to support the verdict. This court has decided in the case of *Ball* v. *Gussenhoven*, 29 Mont. 322, 74 Pac. 871, that "whether the verdict or decision is unsupported by any substantial evidence, being a question of law, may be reviewed by this court on appeal from the judgment." (See, also, *Emerson* v. *Eldorado Ditch Co.*, 18 Mont. 247, 44 Pac. 969; *Withers* v. *Kemper*, 25 Mont. 432, 65 Pac. 422.) We may therefore investigate and determine whether the verdict is supported by any substantial evidence.

The train which struck the cattle was going from Cascade to Hardy. About one hundred and forty feet north of the place where the cattle were struck by the train, a point of rocks juts out to within six feet of the track, and the track curves around it. The engineer testified that when he first saw the cattle they were coming up from behind this point of rocks, on the track, about two hundred feet away from the engine; that the train was running between forty-one and forty-two miles per hour, and was equipped with automatic air-brakes, which were in first-class condition; that immediately upon seeing the cattle he made "an emergency application of the brakes" and gave the stock alarm; that he struck the cattle before the train stopped; that he could have done no more to prevent the striking; that he stopped the train within six hundred feet; and that stopping the train inside of a thousand feet was a good stop. This testimony is uncontradicted, and this witness was the only one called who clearly saw the accident. There is no evidence even tending to show that the engineer of the train was not on the lookout. His testimony is uncontradicted that he saw the cattle, about two hundred feet away from the engine, coming up on the track. His testimony is also uncontradicted that he did everything in his power to stop the train before striking the cattle. No negligence of the defendant under any circumstances can be predicated upon this uncontradicted testimony, and the court below should have directed a verdict in its favor.

But again, there is no competent testimony in the record as to the amount of damages sustained by plaintiff. Three animals were killed, and three injured, one of which afterward died. Plaintiff was the only witness upon the question of damages, and he failed to testify directly or clearly as to the amount of his damages. He was not asked as to the amount of his damages, but simply as to the value of the animals killed and injured. He does not give the damages he sustained to the cattle which were injured and not killed, and his testimony as to the value of the cattle killed is also very indefinite, as shown by the following questions and answers: "Q. What would you place the value of those animals— Taking all those that were injured and killed, what would you place the damage at—the value? A. I wouldn't have sold them for near the amount of money I put them in for. Q. Well, \$240? A. I wouldn't taken that for them no day in the week. Q. Well, tell the jury what they were worth, so we can get the testimony. A. They were worth to me probably more than they would be to most anyone else, because I had only a small herd, and I was trying to grade them up to get as good a herd as I could, but I put them in for \$250. Q. Were they reasonably worth that sum? A. They were worth that to me. Q. Were they worth that to anybody? A. Yes; that's my opinion."

Plaintiff's damages for the cattle which were killed would have been their market value at the time of the killing, with interest thereon, but his damages for the cattle injured could not be fixed by the same rule. We do not think this testimony was sufficient to go to the jury at all. The burden was upon plaintiff to show with reasonable certainty what loss he had sustained, and to show that amount as definitely as possible. (*Orient Min. Co.* v. *Freckleton,* 27 Utah, 125, 74 Pac. 652.) It left the matter of the amount of damages sustained by plaintiff entirely to conjecture by the jury, and no verdict for the amount rendered could be sustained, which had been arrived at upon this testimony. The amount of damages which plaintiff is entitled to recover should not be left to conjecture. (*Shaw* v. *New Year's Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515.)

Another error alleged is the exclusion from evidence and from the jury of a plat or map of the place where the cattle were struck, with the surroundings. It was not offered as original evidence, but only to illustrate the testimony of the witnesses. When it was offered, counsel for defendant stated that it was not made from actual measurements. However, the witness who had it made testified that it was a "fair representation of the course of the Montana Central Railway and of the surroundings a short distance east of Hardy." The objection to its introduction was not because of its being incorrect or inaccurate, but "because it is not shown that the party is competent to draw a map." The court ruled that the plat was not admissible in evidence, but that it might be used to illustrate the testimony of witnesses. After the court had instructed the jury, counsel for defendant asked that the jury might take this map or plat to the jury-room for consideration in making up their verdict. This the court refused to allow, and counsel for defendant excepted. Whether or not this map was admissible in evidence, we need not decide, because it was only offered to be used by the witnesses in explaining their testimony, and the court allowed it to be used for such purpose. There was no error in refusing to allow it to be taken by the jury upon retiring to consider their verdict.

Section 1083 of the Code of Civil Procedure, relied upon by appellant, is as follows: "Upon retiring for deliberation, the jury may take with them all papers which have been received as evidence in the cause, except depositions or copies of such papers as ought not, in the opinion of the court, to be taken from the person having them in possession; and they may also take with them notes of the testimony or other proceedings on the trial taken by themselves or any of them, but none taken by any other person."

The supreme court of California, in construing a statute substantially the same as section 1083, uses the following language: "The statute is not mandatory. It directs the court to allow the jury to take with them any papers received as evidence which may be of service to them in making up their ver-

dict, but none can be taken without permission of the court. The matter is therefore left to the sound discretion of the court,. and its action is not revisable unless there has been an abuse of discretion. But the statute only refers to 'papers received as evidence.' Papers receivable as evidence on the trial of a case are public and private writings. These are, when proved primary secondary, or *prima facie* evidence of their contents. Public maps or charts are also, under certain circumstances, made by law *prima facie* evidence of facts of general notoriety and interest (section 1936, Code of Civil Procedure) ; but a diagram is not a public nor private writing, nor is it made by law primary or secondary or *prima facie* evidence of any fact or object represented by it. When used on the trial of a case it is not used as evidence. It does not prove, nor tend to prove, in the sense of evidence, any fact. It is simply a figure drawn to suggest to the minds of the jurors the relations between objects about which a witness is testifying, and may be drawn on paper or on a stationary blackboard, which cannot be removed. The very construction of the figure itself is defined by the testimony of the witness, and, as illustratory of his testimony, it partakes of it, in the same way that the clearness of. the expression of the witness partakes of his evidence. As such it was receptible by the jury, and was in fact taken with them upon their retirement, as much as any other part of the evidence. The bodily presence of the diagram was therefore unnecessary. It would not have made any more intelligible the evidence into which it had entered, and upon which the jury were bound to make up their verdict. The jury themselves saw no necessity for it, for they did not ask for it. Therefore its absence was not prejudicial to the defendant, and could not have influenced their verdict; and that which could not have influenced the verdict will not be used to vitiate it." (*People* v. *Cochran*, 61 Cal. 548.) Besides, the record does not disclose that the jury expressed any desire to take it. We think the reasoning in the above quotation is conclusive, and therefore hold that the court did not err in its ruling in this. regard.

Yet another error is alleged, in the overruling of an objection by defendant's counsel to a hypothetical question asked by plaintiff's counsel of a certain witness. The objection was that the facts stated in the hypothesis had not been proven. It seems too plain to require the citation of authorities that, in a hypothetical question asked of an expert witness, facts proven must be taken as the basis of the hypothesis; otherwise the opinion of the witness given in reply to the question could not possibly have any relevancy to the case being tried.

We advise that the judgment appealed from be reversed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment is reversed and the cause remanded.

*Reversed and remanded.*